**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) ) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS
PURSUANT TO RULE 11**

COME NOW Plaintiffs Kristen Grace, Francisco Garcia, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively, "Plaintiffs"), by their undersigned attorney, and file this response to defendant RTX Corporation f/k/a Raytheon Technologies Corporation's ("Raytheon") motion for sanctions pursuant to Rule 11.

**FACTUAL BACKGROUND**

Kristen Grace was employed as a Senior Engineer, Design Engineer by Raytheon. Ms. Grace had a sincerely held religious belief against Raytheon's masking policy and requested a religious accommodation for that belief. Raytheon refused to make any accommodation for Ms. Grace's sincerely held religious belief and ultimately fired her for not abandoning her religious convictions and adhering to the masking policy.

Francisco Garza was a Principal Specialist, Misson / Quality Assurance for Raytheon. Mr.

1

Garza had a sincerely held religious belief against Raytheon's COVID testing mandate. Mr. Garza submitted to the testing mandate under duress and suffered religious and spiritual injury because of Raytheon's refusal to accommodate his religious beliefs.

Rossana Hernandez was an employee of Raytheon. She requested a religious accommodation from Raytheon's vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation. Because she would not violate her conscience, Raytheon terminated Ms. Hernandez.

J. Michael Heyser began working for Raytheon in 2008. He requested religious accommodations to the vaccine mandate and the testing, masking, and travel restrictions. Raytheon did not offer any accommodation for the testing, masking, and travel restrictions to which Mr. Heyser objected. Raytheon constructively discharged Mr. Heyser.

Lisa Leake was a Senior Systems Engineer. She requested a religious accommodation to Raytheon's COVID vaccine mandate. In lieu of the vaccine mandate, Raytheon required her to test regularly for COVID instead, which violated her religious beliefs. She was unwilling to violate her religious beliefs to keep her job, so Raytheon fired her.

Christopher Stein worked for Raytheon for over 20 years. Despite repeated efforts to work to find a mutually agreeable alternative, Raytheon fired him for refusing to violate his religious beliefs by taking regular COVID tests.

Christopher Sublett was a long-term employee for Raytheon. When he realized that his work would require him to violate his religious beliefs, he refused, and Raytheon constructively discharged him.

Leslie Zepeda was a Principal Specialist, Engineering Services for Raytheon. She requested a religious accommodation request but could not in good conscience submit her testing results in a in

2

the manner that Raytheon prescribed. Raytheon terminated her.

Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda, were named putative class members, and Francisco Garcia, Rossana Hernandez, and Christopher Sublett unnamed putative class members ("Plaintiffs" herein) in a class action complaint against Raytheon in the District of Arizona, where they alleged Discrimination in violation of Title VII, Wrongful Termination in violation of Title VII, and Retaliation in violation of Title VII. The District Court dismissed the complaint with prejudice, the Ninth Circuit affirmed, and the Supreme Court denied certiorari.

After receiving the petition decision from the Supreme Court, and at the request of Plaintiffs, undersigned counsel conducted a considerable amount of research on the possibilities of moving forward after denial of the Plaintiffs' class action suit and reported back to the Plaintiffs.

Plaintiffs then brought this present suit against Raytheon in their individual capacities for failure to make reasonable accommodation for their religious beliefs in violation of their rights under Title VII. Again, undersigned counsel did so after considerable research into both the facts and the law. Counsel developed a sincere belief in the defensibility and correctness of his legal conclusions and offered them in good faith. Defendants then filed a motion for Rule 11 sanctions.

## **ARGUMENT**

Fed R. Civ P. 11 authorizes a trial court to impose "an appropriate sanction" upon parties who have violated the requirements of Rule 11(b). Defendant Raytheon claims that Plaintiffs have violated Rule 11 by filing this suit which Plaintiffs knew were *res judicata* and time barred. Raytheon is mistaken.

### A. Legal Standard

"If an attorney's conduct appears to fall within the scope of Rule 11, the court must first examine the actions at issue according to a standard of objective reasonableness. At this stage,

3

the inquiry focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified. If the standard of objective reasonableness is unsatisfied, sanctions are mandatory." *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

In the cases that Defendants cite for the legal standard for Rule 11 sanctions, the courts describe the attorneys' actions as follows:

- "[W]e can see absolutely no objective indication that plaintiff's counsel ever intended to seek a modification of the law. Indeed, counsel's statements at oral argument indicate that the action was filed in a speculative effort to find someone financially liable for plaintiffs' injuries before the statute of limitations expired. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

- In a case where an attorney brought Rule 11 sanctions against an adverse attorney for his client's perjury, he did so despite "absolutely no evidence of involvement" in the perjury by the attorney, and "a quick reading of [case law] would have revealed that Cleveland's complaint had absolutely no chance of success under the existing precedent." *Cleveland Demolition Co. v. Azcon Scrap Corp., Div. of Gold Fields Am. Indus., Inc.*, 827 F.2d 984, 988 (4th Cir. 1987)(citations omitted).

- "[P]laintiff made factual contentions that were not only utterly misleading and unsupported by record evidence but, in some cases, outright misrepresentations […] [I]t appears clear that plaintiff uncovered no information to support its factual contentions, but nevertheless persisted in presenting such contentions as fact, in some cases without citation, and in other cases by citing evidence that actually contradicted such contentions. Plaintiff also continued advocating its dubious fraud theories despite the lack of any factual basis whatsoever." *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, Civil Action No. 2:07cv530, 2009 U.S. Dist. LEXIS 73903, at *33 (E.D. Va. Aug. 20, 2009).

Here, there is nothing similar either in kind or degree to the behavior described above. There are no misrepresentations or allegations of misrepresentations. Judging from the Defendant's motion, there appears to be no issue with Plaintiffs' representations of the facts at all.

4

Instead, what we have is a dispute about the law, with the Defendant claiming that no reasonable attorney could believe himself to be justified in undersigned counsel's interpretation of the law. Plaintiffs disagree.

### B. A reasonable attorney in like circumstances could conclude that *res judicata* does not bar Plaintiffs' claims

Defendant tries to have it both ways with regard to Plaintiffs' arguments regarding sanctions, first acknowledging that the parties' counsel had communicated, and that, "[w]ith respect to *res judicata*, Plaintiffs' counsel argued that Plaintiffs' claims were not barred under *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984)." Memorandum at 14. Defendant then argues, "[t]here is no reasonable excuse for the Arizona Plaintiffs' attempt to assert claims in this Court that they know are barred." Memorandum at 18.

Defendant's asserted insight into the subjective mindset of Plaintiffs and their counsel notwithstanding, *Cooper* provides sufficient support for Plaintiffs' actions in the present suit such that a reasonable attorney could conclude that he was justified in filing their individual claims.

Defendant argues that the doctrine of *res judicata* bars this action. This would be true if this action was a class complaint, or if the original action had been a complaint bringing forward several individuals actions. But neither is true.

Instead, Plaintiffs originally filed a class complaint as members of a putative class. The District Court dismissed the class complaint, the Ninth Circuit affirmed, and the Supreme Court denied certiorari. The Plaintiffs then pursued their individual claims in the instant action.

In *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984), the Supreme Court considered an action that the Equal Employment Opportunity Commission brought against the Federal Reserve Bank of Richmond alleging racial discrimination according to Title VII of the Civil Rights Act of

1964. *Id.* at 869. Six months after the action commenced, "four individual employees were allowed to intervene as plaintiffs. In their 'complaint in intervention,' these plaintiffs alleged that the Bank's employment practices violated 42 U.S.C. § 1981, as well as Title VII; that each of them was the victim of employment discrimination based on race; and that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race." *Id.* at 869-870.

The issue in the case, according to the Court, was "whether a judgment in a class action determining that an employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees precludes a class member from maintaining a subsequent civil action alleging an individual claim of racial discrimination against the employer." *Id.* at 869.

The Court explained, "[c]laims of two types were adjudicated in the *Cooper* litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor. Those individual decisions do not, of course, foreclose any other individual claims. Second, the class claim that the Bank followed 'policies and practices' of discriminating against its employees has also been decided. It is that decision on which the Court of Appeals based its res judicata analysis." *Id.* at 873-874

The Court clearly delineates between four intervening, individual plaintiffs and the plaintiffs who constituted a putative class. It is careful to note that the decisions in the individual cases of the intervenors do not "foreclose any other individual claims."

The court then goes on to conclude that,

> The court erred, however, in the preclusive effect it attached to that prior adjudication. That judgment (1) bars the class members from bringing another class action against the Bank alleging a pattern or practice of discrimination for the relevant time period and (2) precludes the class members in any other litigation with the Bank from relitigating the question whether the Bank engaged

6

> in a pattern and practice of discrimination against black employees during the relevant time period. The judgment is not, however, dispositive of the individual claims the Baxter petitioners have alleged in their separate action. *Id.* at 880.

Plaintiffs here in their original complaint were trying to establish a pattern and practice of discrimination under Title VII of the Civil Rights Act, which is the essential nature of a class action claiming employment discrimination. They are not trying to do so here, nor are they bringing another class action against Defendant. Here they are instead litigating their individual claims. It is, Plaintiffs submit, reasonable to conclude that the precedent set forth in *Cooper* allows the action here.

Defendant mischaracterizes the significance of the Court's treatment of the intervening plaintiffs in Cooper by attempting to treat them as "named plaintiffs." Memorandum at 18. The Court itself makes a distinction between the two groups that Defendant does not, allowing individual claims by what Defendant calls "named plaintiffs" to continue even after those class members had provided testimony in the class litigation. *Cooper*, 467 U.S. 881 (1984). The Court clearly makes a distinction between the group of named class members and the intervening parties. This is a critical distinction in *Cooper* that Defendant misses. *Cooper* clearly stands for the proposition that the plaintiffs here may proceed with their individual claims in this case, at least in so far as it may form the basis for a reasonable attorney to conclude that it is appropriate to bring the individual claims in this case.

### C. A reasonable attorney in like circumstances could conclude that Plaintiffs' claims are not time barred

Defendant argued for nearly 18 pages laden with italics and bold print that Plaintiffs' complaint was *res judicata* because they had already filed an action. Defendant then reverses itself on page 18 and claims that "none of the Plaintiffs filed suit within 90 days of receiving their right-to-

7

sue letters."

Defendant, in fact, had not got beyond page one before making the self-contradictory claim that,

> Five of the plaintiffs in this action—Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (collectively, the "Arizona Plaintiffs")—brought suit against Raytheon under 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII") in the United States District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action").

As Defendant acknowledges, that action commenced on September 24, 2022, which was before defendant claims that all Plaintiffs received their Right to Sue letters. Memorandum at 9.

Defendant cannot have it both ways. If it is in fact the case that "none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters," that settles the *res judicata* issue. If it is instead the case that "five of the plaintiffs in this action…brought suit against Raytheon" within the 90 days of their Right to Sue letters, which they have, then that settles the timeliness issue.

In its section on timeliness,[1] Defendant never attempts to reconcile its claim that none of the plaintiffs filed suit within 90 days of their Right to Sue letters and its claim elsewhere that the five named plaintiffs filed a suit that bars the present action, which it says they "commenced […] on September 24, 2022," before the Right-to-Sue dates that it provides. Defendant in that section never mentions the first suit and makes claims that these plaintiffs are two years beyond their Right to Sue Letters as though the original complaint and the first part of its memorandum did not happen.

It is not for Plaintiffs to speculate in order to reconcile these contradictions. Whatever Defendant's meaning might be, the original action was, as defendant admits, a class complaint.

---

[1] Section B of its "Argument" section, beginning on page 18 of its memorandum.

8

"*American Pipe* [*& Constr. Co. v. Utah*, 414 U. S. 538 (1974)] and *Crown, Cork* [*& Seal Co. v. Parker*, 462 U. S. 345, (1983)] addressed […] putative class members who wish to sue individually after a class-certification denial." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 739 (2018). "American Pipe established that the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id* (citations omitted). "In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule 'to class members filing separate actions,' in addition to those who move to intervene, would result in 'a needless multiplicity of actions' filed by class members preserving their individual claims—'precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid.'" *Id*. "The filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown v. Parker*, 462 U.S. 345, 350 (1983), *quoting Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

The standard that the Supreme Court articulated forty years ago and has upheld since is the legal framework that the Plaintiffs here fall within. The five named plaintiffs brought a class action that the District Court dismissed; they are now able to bring individual claims, which is what they did here. The plaintiffs who were not named in the original suit are unnamed plaintiffs who have been part of the group the whole time, but who were not prepared at the time to join as named plaintiffs. There was, in the words of the Supreme Court, no reason to create a "needless multiplicity of actions."

"A federal class action is no longer an invitation to joinder but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974)." The rule that during the pendency

9

of a class action complaint, the statutes of limitations for individual rights to action are tolled applies here. All of the plaintiffs timely filed. They were all either named or unnamed members of the putative class that the class action complaint represented. When the group received the last word on the class complaint, they filed the individual complaints that constitute this action. This is how the Supreme Court has interpreted Rule 23 to work for forty or fifty years.

## CONCLUSION

Because a reasonable attorney under the circumstances could conclude that Plaintiffs' claims are not barred by time nor *res judicata*, the Court should deny Raytheon's motion for sanctions and award attorneys fees and costs to Plaintiffs.

Dated: February 7, 2025                    Respectfully Submitted,

E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydllg.com
*Counsel for the Plaintiffs*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 7, 2025.

E. Scott Lloyd

10

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing, was filed and served via ECF, and was served via

Federal Express and email on this 7th day of February 2025, upon:

Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

*Counsel for Defendant RTX Corporation*

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com
*Counsel for Plaintiffs*

11