## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) ) |  |
| **Plaintiffs,** | ) ) | Civil Action No. 1:24-cv-02083-CMH-WBP |
| v. | ) ) |  |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) | Dated: March 14, 2025 |
| **Defendant.** | ) |  |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COME NOW Plaintiffs Kristen Grace, Francisco Garcia, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively, "Plaintiffs"), by their undersigned attorney, and states the following in opposition to Defendant RTX Corporation's ('RTX") Motion to Dismiss.

### FACTUAL BACKGROUND

#### A.     Factual Allegations

Kristen Grace was employed as a Senior Engineer, Design Engineer by Raytheon. Ms. Grace had a sincerely held religious belief against Raytheon's masking policy and requested a religious accommodation for that belief. Raytheon refused to make any accommodation for Ms. Grace's sincerely held religious belief and ultimately fired her for not abandoning her religious convictions and adhering to the masking policy.

Francisco Garza was a Principal Specialist, Misson / Quality Assurance for Raytheon. Mr.

1

Garza had a sincerely held religious belief against Raytheon's COVID testing mandate. Mr. Garza submitted to the testing mandate under duress and suffered religious and spiritual injury because of Raytheon's refusal to accommodate his religious beliefs.

Rossana Hernandez was an employee of Raytheon. She requested a religious accommodation from Raytheon's vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation. Because she would not violate her conscience, Raytheon terminated her.

J. Michael Heyser began working for Raytheon in 2008. He requested religious accommodations to the vaccine mandate and the testing, masking, and travel restrictions. Raytheon did not offer any accommodation for the testing, masking, and travel restrictions to which Mr. Heyser objected. Raytheon constructively discharged Mr. Heyser.

Lisa Leake was a Senior Systems Engineer. She requested a religious accommodation to Raytheon's COVID vaccine mandate. In lieu of the vaccine mandate, Raytheon required her to test regularly for COVID instead, which also violated her religious beliefs. She was unwilling to violate her religious beliefs to keep her job, so Raytheon fired her.

Christopher Stein worked for Raytheon for over 20 years. Despite repeated efforts to work to find a mutually agreeable alternative, Raytheon fired him for refusing to violate his religious beliefs by taking regular COVID tests.

Christopher Sublett was a long-term employee for Raytheon. When he realized that his work would require him to violate his religious beliefs, he refused, and Raytheon constructively discharged him.

Leslie Zepeda was a Principal Specialist, Engineering Services for Raytheon. She requested a religious accommodation request but could not in good conscience submit her testing results in a in

2

the manner that Raytheon prescribed. Raytheon terminated her.

### B.       Procedural History

Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda, were named putative class members, and

Francisco Garcia, Rossana Hernandez, and Christopher Sublett unnamed putative class members

("Plaintiffs" herein) in a class action complaint against Raytheon in the District of Arizona, where

they alleged Discrimination, Wrongful Termination, and Retaliation in violation of Title VII. The

District Court dismissed the complaint with prejudice, the Ninth Circuit affirmed, and the Supreme

Court denied certiorari on October 24, 2024.

After receiving the petition decision from the Supreme Court, and at the request of Plaintiffs,

undersigned counsel conducted a considerable amount of research on the possibilities of moving

forward after denial of the Plaintiffs' class action suit and reported back to the Plaintiffs.

Plaintiffs then brought this present suit in their individual capacities against Raytheon for

failure to make reasonable accommodation for their religious beliefs in violation of their rights under

Title VII. Counsel developed a sincere belief in the defensibility and correctness of his legal

conclusions and offered them in good faith. Defendants filed a motion for Rule 11 sanctions and a

motion to dismiss.

Plaintiffs then filed an amended complaint as of right pursuant to Federal Rule of Civil

Procedure 15(a)(1)(A). Defendant filed this motion to dismiss.

<b><u>ARGUMENT</u></b>

Fed R. Civ P. 12(b)(6) permits a defendant to motion for dismissal should a plaintiff fail to

state a claim upon which relief can be granted. Defendant RTX claims that Plaintiffs have failed to

state a claim for four reasons: that it is *res judicata*, that it is untimely, that the Plaintiffs have

insufficiently plead the facts for a claim under Title VII, and that judicial admissions in another

proceeding bar the Plaintiffs' claims here.

### A.       Legal Standard

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be facially plausible under the familiar Twombly standard, and courts must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Midwest Feeders, Inc., v Bank of Franklin*, 886, F3d 507, 513 (5th Cir. 2018).

### B.       *Res judicata* **does not bar Plaintiffs' claims**

RTX argues that because the trial court in Arizona dismissed a class action suit involving the same parties as putative class members with prejudice, it bars the instant case where plaintiffs raise similar claims in their individual capacities. RTX is mistaken.

In *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984), a case out of the Fourth Circuit, the Supreme Court considered an action that the Equal Employment Opportunity Commission brought against the Federal Reserve Bank of Richmond alleging racial discrimination according to Title VII of the Civil Rights Act of 1964. *Id.* at 869. Six months after the action commenced, "four individual employees were allowed to intervene as plaintiffs. In their 'complaint in intervention,' these plaintiffs alleged that the Bank's employment practices violated 42 U.S.C. § 1981, as well as Title VII; that each of them was the victim of employment discrimination based on race; and that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race." *Id.* at 869-870.

The issue in *Cooper*, according to the Court, was "whether a judgment in a class action

4

determining that an employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees precludes a class member from maintaining a subsequent civil action alleging an individual claim of racial discrimination against the employer." *Id.* at 869.

The Court explained, "[c]laims of two types were adjudicated in the *Cooper* litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor. Those individual decisions do not, of course, foreclose any other individual claims. Second, the class claim that the Bank followed 'policies and practices' of discriminating against its employees has also been decided. It is that decision on which the Court of Appeals based its res judicata analysis." *Id.* at 873-874

The Court clearly delineates between four intervening, individual plaintiffs and the plaintiffs who constituted a putative class. It is careful to note that the decisions in the individual cases of the intervenors do not "foreclose any other individual claims."

The court then goes on to conclude that,

> The court erred, however, in the preclusive effect it attached to that prior adjudication. That judgment (1) bars the class members from bringing another class action against the Bank alleging a pattern or practice of discrimination for the relevant time period and (2) precludes the class members in any other litigation with the Bank from relitigating the question whether the Bank engaged in a pattern and practice of discrimination against black employees during the relevant time period. The judgment is not, however, dispositive of the individual claims the Baxter petitioners have alleged in their separate action. *Id.* at 880.

Plaintiffs here in their original complaint were trying to establish a pattern and practice of discrimination under Title VII of the Civil Rights Act, which is the essential nature of a class action claiming employment discrimination. They are not trying to do in this case, nor are they bringing another class action against Defendant. Here they are instead litigating their individual claims.

According to *Cooper*, the action here is allowed.

Defendant in its (now moot) Rule 11 motion mischaracterizes the significance of the Court's treatment of the intervening plaintiffs in *Cooper* by attempting to treat them as "named plaintiffs." The Supreme Court itself makes a distinction between the two groups that Defendant does not, allowing individual claims by what Defendant calls "named plaintiffs" to continue even after those class members had provided testimony in the class litigation. *Cooper*, 467 U.S. 881 (1984). The Court clearly makes a distinction between the group of named class members and the intervening parties. This is a critical distinction in *Cooper* that Defendant misses. *Cooper* clearly stands for the proposition that the plaintiffs here may proceed with their individual claims in this case, at least in so far as it may form the basis for a reasonable attorney to conclude that it is appropriate to bring the individual claims in this case.

In its Motion to Dismiss, Defendant again loses the thread. Defendant states that *Cooper* "holds that where 'the individual claims' of named plaintiffs 'have been finally decided in the [defendant's] favor,' those individuals are barred from suing again." In this quote, the Court is referring to the *intervening* plaintiffs who had attached their individual claims to a class action. The Court in the opinion was making clear that the individual claims of the class members could proceed, which is the circumstance of the Plaintiffs here. Note 7 of *Cooper*, which the Defendant also cites, simply clarifies the disposal of the four intervening plaintiffs in that case. It adds no weight to the Defendant's theory.

### C.    Plaintiffs' claims are not time barred

Defendant argues that Plaintiffs' complaint is time barred as none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters. This is not correct, however.

As the Supreme Court has stated, "*American Pipe* [*& Constr. Co. v. Utah*, 414 U. S. 538

6

(1974)] and *Crown, Cork* [*& Seal Co. v. Parker*, 462 U. S. 345, (1983)] addressed […] putative class members who wish to sue individually after a class-certification denial." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 739 (2018). "American Pipe established that the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id* (citations omitted).

"In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule 'to class members filing separate actions,' in addition to those who move to intervene, would result in 'a needless multiplicity of actions' filed by class members preserving their individual claims—'precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.'" *Id*. "The filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown v. Parker*, 462 U.S. 345, 350 (1983), *quoting Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

The standard that the Supreme Court articulated forty years ago and has upheld since is the legal framework that the Plaintiffs here fall within. Plaintiffs were putative class members in a class action that the District Court dismissed; they are now able to bring individual claims, which is what they did here. The plaintiffs who were not named in the original suit are unnamed class members who have been part of the group the whole time, but who were not prepared at the time to join as named plaintiffs. There was, in the words of the Supreme Court, no reason to create a "needless multiplicity of actions."

"A federal class action is no longer an invitation to joinder but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974). The rule that during the pendency of

a class action complaint, the statutes of limitations for individual rights to action are tolled

applies here. All of the plaintiffs timely filed. They were all either named or unnamed members

of the putative class that the class action complaint represented. When the group received the last

word on the class complaint, they filed the individual complaints that constitute this action. This

is how the Supreme Court has interpreted Rule 23 to work for forty or fifty years.

Defendant contends that *American Pipe* tolling does not continue through appeal but

rather ends when the District Court dismisses a case and does not continue during the appeal of

that dismissal.

For that proposition, it cites no controlling authority. The only Fourth Circuit case that it

cites is *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 212 (4th Cir. 2006). The quote that it

provides and emphasizes, "[T]he *American Pipe* rule provides a narrow exception to the fixed

statutes of limitations, suspending their running from the date a class action is filed until the date

it is denied, for whatever reason," is the conclusion of an analysis that discusses the possibility of

tolling depending on the basis of dismissal of the class action. The paragraph before starts,

> As we have noted, [t]he Crown, Cork & Seal Court appears to have untethered
> this tolling rule from any necessary connection to the reasons for denying
> certification. […] In untethering the rule, the Supreme Court signaled that
> American Pipe tolling extends as far as is justified by the objectively reasonable
> reliance interests of the absent class members. If courts were to toll statutes of
> limitations only when class certification was denied for lack of numerosity, the
> rule, which would turn on the substantive reason for the denial, would not
> discourage premature intervention because class members could not know or
> predict at the time of filing why class certification might eventually be denied. *Id.*
> at 211(citations omitted).

When the Fourth Circuit adds "for whatever reason," it is simply stating that the

statute of limitations is tolled during consideration of a class action whether the dismissal

is for numerosity reasons or other grounds.

8

In *Bridges*, the plaintiffs *abandoned* their class claims in pursuit of a settlement agreement and consent decree, and then two years later attempted to amend their complaint to add 18 individuals from the class as individual plaintiffs. The Court ruled that the statute of limitations had run. *See*, *Id, generally*. The case does not address what happens to *American Pipe* tolling while the parties appeal. The reality is that there is not a rule in the Fourth Circuit or in this District for what happens when the plaintiffs appeal the dismissal of the class action suit.

To the extent that other Circuits have found that the statute of limitations is not tolled during appeal, this seems to conflict with the Supreme Court's concern over the purpose of Rule 23, which is, in its words, "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions," and a "needless multiplicity of actions."

To find to the contrary is to suggest that it would be appropriate for the individual class members to file individual complaints and have them proceed through the initial phases of litigation, costing plaintiffs and the defendants in attorneys fees, and this Court or another(s) in time and resources, only to have those individual cases mooted in the event of a successful appeal. This approach contradicts the purpose of Rule 23—this Court should decline to follow any Court in another jurisdiction that would take an approach that would lead to such unnecessary actions on the part of parties seeking to preserve their individual claims. An approach that acknowledges *American Pipe* through the end of any appeal in a class action is more in line with Rule 23 and Supreme Court precedent.

9

**D.      Plaintiffs Plead Sufficient Facts to Raise a Title VII Claim**

To state a claim for failure to accommodate religious beliefs under Title VII, a plaintiff must allege that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Ellison v. Inova Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996). Taking each element in turn:

***He or she has a bona fide religious belief that conflicts with an employment requirement***

- Kristen Grace alleges that she "requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking and testing policy that Defendant held for unvaccinated individuals."

- Francisco Garza "informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing.

- Rosana Hernandez "could not in good conscience agree to the testing that came as a result of her request for accommodation."

- Michael Heyser "found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs."

- "RTX required [Lisa Leake] to test instead, which also violated her religious beliefs."

- "RTX responded that [Christopher Stein] would have to test, which also violated his religious beliefs."

- Christopher Sublett "submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing."

10

- Leslie Zepeda "requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA."

### *He or she informed the employer of this belief*

- Kristen Grace alleges that she "immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced in September 2021."

- Francisco Garza "requested a religious accommodation to RTX's testing mandate that RTX denied."

- Rosana Hernandez "could not in good conscience agree to the testing that came as a result of her request for accommodation."

- Michael Heyser "found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs, which he also communicated to RTX."

- "[Lisa Leake] informed RTX of her religious objection to the testing requirement."

- " [Christopher Stein] informed RTX of his religious beliefs against testing as well."

- Christopher Sublett "communicated his religious objection to testing as well."

- Leslie Zepeda "requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA. She communicated this to RTX"

### *He or she was disciplined for failure to comply with the conflicting employment requirement*

Defendant fired all of the Plaintiffs except Mr. Garza, who experienced "religious and spiritual injury."

Plaintiffs have alleged all of the elements in the *Chalmers* analysis. Defendant for its part cites inapposite analysis from a variety of cases that go to the sincerity of complainants'

11

beliefs, which are admittedly not at issue here. As for that question, analysis in this District has taken a different approach. "This Court therefore declines to employ […] any […] test that would require it to scrutinize whether Plaintiff's beliefs are 'religious' beliefs. 'Heresy trial [sic] are foreign to our Constitution,' and one will not be conducted in this proceeding. This is particularly true at the motion to dismiss stage, where a plaintiff's job is to plead, not to prove. Aside from a blanket assertion in the complaint that a belief is religious, it is unclear what more a plaintiff can or should do." *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 1:23cv1110 (DJN), 2024 U.S. Dist. LEXIS 110887, at *11-12 (E.D. Va. June 24, 2024).

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U. S. C. §2000e-2(a)(1). It announces no pleading standard, and to the extent that the Fourth Circuit has identified an approach in *Chalmers*, the Plaintiffs here have met it.

### E.   Plaintiffs' Claims are not Barred by Judicial Admissions

Judicial admissions to not bar Plaintiffs' claims in the instant case. To show that plaintiffs have made judicial admissions that are detrimental to the instant case, Defendant quotes from proceedings and filings from a different case than the instant case.

However, "Judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases." *In re Raiford,* 695 F.2d 521, 253 (11th Cir. 1983). *See also*, *Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151 n. 17 (11th Cir. 2009); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) ("[J]udicial admissions are binding for the purpose of the case in which the admissions are made

12

including appeals. This does not make the same judicial admissions conclusive and binding in separate and subsequent cases.")

Defendant quotes *Hanover Cty. Unit of the NAACP v. Hanover Cty.*, 641 F. Supp. 3d 280 (E.D. Va. 2020), *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141(4th Cir. 2020) and *Davis v. Complete Auto Recovery Servs.*, 2017 U.S. Dist. LEXIS 207934 (D. Md. Dec. 15, 2017) to corroborate its claim that judicial admissions have barred the instant case. However, each of these cases only speak to judicial admissions that occurred during that same litigation. *See Hanover Cty.*, 641 F. Supp. 3d at 295 (finding that the factual assertion of the relevant dates in the complaint being litigated were judicial admissions and dispositive in determining whether the statute of limitations had expired); *Flexi-Van Leasing, Inc.* 837 Fed. Appx. at 164 (finding that factual assertion in the complaint being litigated was a judicial admission); and *Davis* 2017 US Dist. LEXIS 207934 at 3-4 (factual assertion in first complaint makes futile any amended complaint in that action as the factual assertion was a judicial admission). When looking in the federal rules for prior statements, the only place that they are found is in the rules of evidence as tools for impeachment or when a witness is unavailable. Defendant's argument is an improper use of the prior statements concept in an attempt to shoehorn a dismissal.

Even if Defendant could show that a judicial admission was made, "a judicial admission, however, is not necessarily the final word. A court, unquestioningly, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." *Flexi-Van Leasing* 837 Fed. Appx. at 146.

Here, as is clear in the record on appeal in the previous case, there were significant issues with the manner in which the parties' previous attorney framed the case through its initial stages

13

and beyond their initial filings in the Ninth Circuit. The Plaintiffs attempted in their filings to make this clear to no avail. These issues call into question any statement that could otherwise be considered a judicial admission.

## CONCLUSION

Because Plaintiffs' claims are not barred by *res judicata*, time, or judicial admissions, and Plaintiffs properly pleaded claims under Title VII, the Court should deny Defendant's Motion to Dismiss.

Dated: March 14, 2025                          Respectfully Submitted,


/s/ E. Scott Lloyd
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydllg.com
*Counsel for the Plaintiffs*


## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing, was filed and served via ECF, and was served via Federal Express and email on this 14th day of March 2025, upon:


Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560

14

Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*


<u>E. Scott Lloyd</u>
E. Scott Loyd
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
scott@lloydlg.com
*Counsel for Plaintiffs*