**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 24-cv-2083-CMH-WBP<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF RENEWED MOTION FOR SANCTIONS PURSUANT TO RULE 11**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by its undersigned attorneys, respectfully submits this memorandum of points and authorities in support of its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Five of the plaintiffs in this action—Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (collectively, the "Arizona Plaintiffs")—brought suit against Raytheon under 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII") in the United States District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action"). They alleged religious discrimination in connection with Raytheon's COVID-19

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

315454821v.2

vaccination policy from 2021 (the "2021 Policy").  The Arizona District Court dismissed the Arizona Plaintiffs' claims *with prejudice*.  The Arizona Plaintiffs appealed to the Ninth Circuit, which unanimously affirmed the dismissal *with prejudice*.  The Arizona Plaintiffs sought review in the U.S. Supreme Court, but the Court denied their petition for a writ of certiorari in October 2024.

Approximately one month later, the Arizona Plaintiffs filed suit in this Court, and they filed an Amended Complaint on February 14, 2025.  Their sole cause of action in this new lawsuit is concededly based upon the same facts as the Arizona Action, *i.e.*, Raytheon's purported religious discrimination in connection with the 2021 Policy.  The Arizona Plaintiffs are suing under the same statute, Title VII.  Under black-letter law, the Arizona Plaintiffs' claims are barred by *res judicata*.  By nonetheless commencing this action, and then doubling-down by filing an Amended Complaint, the Arizona Plaintiffs and their counsel violated Rule 11.[2]

Moreover, the claims of the Arizona Plaintiffs and plaintiffs Francisco Garza, Rossana Hernandez, and Chirstopher Sublett (the "Additional Plaintiffs") are unequivocally time-barred.  A plaintiff bringing suit under Title VII has 90 days to commence an action after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC").  Here, the Arizona Plaintiffs and the Additional Plaintiffs (collectively, "Plaintiffs") filed suit on November 20, 2024.  Yet they received their respective right-to-sue letters from the EEOC between October 3, 2022 and August 5, 2024.  Thus, many of the Plaintiffs' claims have been time-barred for several years.  Even as to the most recent right-to-sue letter, for Mr. Heyser, he

---

[2] Although Raytheon limits its request for Rule 11 sanctions based upon *res judicata* to the Arizona Plaintiffs, the Complaint in this action affirmatively alleges that "*all plaintiffs* submitted their claims as part of the" Arizona Action, which appears to be a binding judicial admission that *all* Plaintiffs' claims here are barred by *res judicata*. ECF No. 16 ¶ 68; *see also id.* ¶¶ 31, 38, 61.  The Court need not reach this issue, however, because all Plaintiffs' claims are time-barred as set forth below.

315454821v.2

was required to file suit by November 5, 2024, but did not.  Plaintiffs' claims are quite obviously time-barred.

To try to avoid this result, Plaintiffs have argued that their claims were tolled by the Arizona Action—an admission that the Arizona Action and this action share the same facts and circumstances.  But, any tolling period ended, and the limitations period resumed, as soon as the Arizona District Court's judgment dismissing the Arizona Action became effective in early 2023.  Accordingly, tolling does not help Plaintiffs here: they failed to file suit within 90 days of any tolling period ending or the receipt of their right-to-sue letters.

Plaintiffs and their counsel knew that this action, and their certifications to the Court, violated Rule 11.  Plaintiffs' counsel represented the Arizona Plaintiffs during part of the Ninth Circuit proceedings and in the U.S. Supreme Court.  Moreover, Raytheon's counsel wrote to Plaintiffs' counsel on December 9, 2024 to advise him of the foregoing facts.  Plaintiffs refused to withdraw this action, however.  On December 31, 2024, 21 days before filing their original sanctions motion with this Court, Raytheon served a copy of its initial Rule 11 motion papers on Plaintiffs' counsel pursuant to Rule 11(c).  After that motion was fully briefed on February 13, 2025, Plaintiffs *doubled-down* by filing an Amended Complaint.  Raytheon served this renewed motion on March 3, 2025, and Plaintiffs have still refused to withdraw the Amended Complaint.

Plaintiffs' conduct is egregious.  There is no good-faith basis on which this action could be maintained.  Accordingly, this Court should sanction Plaintiffs by: (a) dismissing this action, with prejudice; (b) awarding Raytheon $45,000 in fees and costs in connection with responding to this action; and (c) awarding such other and further relief as the Court deems warranted.

3

315454821v.2

## FACTUAL BACKGROUND

Raytheon accepts the facts recited in Plaintiff's Amended Complaint (ECF No. 16) and in the Complaint from the Arizona Action (the "Arizona Complaint") as true for purposes of this motion only.  A copy of the Arizona Complaint is annexed as **Exhibit A** is the accompanying Declaration of Samantha Brooks (the "Brooks Declaration").[3]

### The Arizona Action

The Arizona Plaintiffs commenced the Arizona Action on September 24, 2022.  Brooks Decl. Ex. A.  The Arizona Plaintiffs alleged that on September 15, 2021, Raytheon announced that all of its employees would be required to be vaccinated against COVID-19, *i.e.*, the 2021 Policy.  *Id.* ¶¶ 18-19.  The Arizona Plaintiffs objected to receiving COVID-19 vaccines, and for at least some of the Arizona Plaintiffs, the objection was allegedly based upon "the sincere religious belief" of an unspecified religious denomination that "the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God."  *Id.* ¶¶ 20-21.  The Arizona Plaintiffs alleged that, beginning on September 15, 2021, Raytheon provided "blanket" exemptions from the 2021 Policy for employees who sought exemptions for medical or religious reasons, on the condition that those exempt employees agreed to "mask wear and weekly COVID testing."  *Id.* ¶ 47.  The Arizona Plaintiffs affirmatively alleged that they "***did not object*** to other non-permanent safety measures, such as physical distancing, sick leave, indoor masking, and teleworking."  *Id.* ¶ 29 (emphasis added).

---

[3] The Court may take judicial notice of that court filing and other filings in the Arizona Action.  *See, e.g., Anderson v. Bolster*, 2020 U.S. Dist. LEXIS 156859, at *7-8 (E.D. Va. Aug. 27, 2020) ("a court may take judicial notice of matters of public record such as court filings or records") (citing *Wittholn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006)).

4

315454821v.2

Each of the Arizona Plaintiffs alleged that he or she sought, and received, an exemption from the 2021 Policy, but refused to comply with the health and safety protocols that were conditions of that exemption:

**Plaintiff Leake**:  On November 1, 2021, Ms. Leake "submitted a request for religious accommodation." *Id.* ¶ 35.  Ms. Leake alleged that her "religious accommodation was approved with a…weekly testing stipulation." *Id.* ¶ 36.  Ms. Leake asserted that this stipulation "was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs," but did not explain how or why.  *See id.*  In fact, Ms. Leake admitted that her concerns about testing were not religious at all, but rather based on the false assertion that the tests "were the most invasive EUA [Emergency Use Authorization] versions, that have since been recalled by the FDA."  *Id.* ¶ 36.  Ms. Leake alleged that she was fired on February 1, 2022, not because of her religious beliefs, but because of "non-compliance with the Defendant's Covid 19 mandate" (*i.e.*, her refusal to submit to testing).  *Id.* ¶ 37.

**Plaintiff Grace**:  Ms. Grace alleged that, on February 25, 2021, she "requested a transfer to a remote position, due to her sincere religious objections…that precluded her from complying to [sic] Defendant's COVID-19 policy." *Id.* ¶ 39.  Raytheon's 2021 Policy was not announced until September 15, 2021, *see id.* ¶ 18, and the Arizona Complaint did not explain what "COVID-19 policy" was in effect as of February 25, 2021, a time period in which vaccines were not widely available to the public.  *See id.* ¶ 39.[4]  Ms. Grace alleged that on May 7, 2021, Raytheon "denied [her] request for a remote position" and instead placed her "involuntary medical leave."  *See id.* ¶ 40.  Ms. Grace alleged, without any explanation, that on September 24,

---

[4] The COVID-19 vaccines did not become available to all individuals over the age of 16 until April 19, 2021.  *See* U.S. Dep't of Health and Human Services, *COVID-19 Vaccines*, https://tinyurl.com/3wh37acb (last visited December 31, 2024).

2021,[5] she "secured a remote position" with Raytheon. *Id.* ¶ 41. She then applied for a religious exemption, which was allegedly "denied based on Plaintiff's [unspecified] medical disability." *Id.* ¶ 42. Ms. Grace alleged that she was subject to unspecified "harassment, coercion, threats, and humiliation," and was ultimately terminated on January 31, 2022 "for non-compliance to [sic] Defendant's COVID-19 mandate." *Id.* ¶ 43.

**Plaintiff Heyser**: Mr. Heyser alleged that on September 30, 2021, Raytheon "lifted masking and social distancing requirements for vaccinated employees only, making [Mr. Heyser] easily identifiable as a person who had a medical or religious objection." *Id.* ¶ 48. Mr. Heyser conceded that he refused to abide by the health and safety protocols that were conditions of his exemption, allegedly based on unspecified religious beliefs, and was "repeatedly advised and warned" that failure to comply with the conditions of his exemption "would be termination." *Id.* ¶¶ 49-51. Mr. Heyser opted to resign on January 14, 2022. *Id.* ¶ 52.

**Plaintiff Stein**: Mr. Stein alleged that he was unable to obtain a medical exemption because he did not have "a doctor's note" supporting such an exemption. *Id.* ¶ 54. Mr. Stein was instead advised that he could seek a religious exemption, which would allegedly require Mr. Stein to comply with "blanket" conditions applied to all medical and religious exemptions, "masking, social distancing, weekly testing." *Id.* ¶ 55. Mr. Stein objected to these health and safety protocols on non-religious grounds because they were "only required . . . of unvaccinated employees" and because they involved the use of "invasive PCR tests." *Id.* ¶ 56. Mr. Stein alleged that he refused to comply with the health and safety protocols, and was terminated on January 31, 2022 "for non-compliance." *Id.* ¶¶ 59-60.

---

[5] This paragraph of the Arizona Complaint says "September 24, 2022," but since that is the date on which the Arizona Complaint was filed, the Arizona Plaintiffs presumably meant 2021.

6

**Plaintiff Zepeda**:  Ms. Zepeda alleged that she submitted "a religious accommodation based on sincerely held faith for [sic] the COVID 19 vaccine."  *Id.* ¶ 63.  Ms. Zepeda further alleged that she sought "a medical accommodation to submit a saliva only test for COVID 19." *Id.*  Ms. Zepeda did not allege that Raytheon refused her request for a "saliva only test."  *See id.* Instead, Ms. Zepeda alleged that she was terminated on February 2, 2022, not because of her religious beliefs, but because she refused to provide "a waiver of HIPPA [sic] rights" as part of the testing requirement.  *Id.* ¶¶ 65-66.

Based upon these allegations, the Arizona Plaintiffs commenced the Arizona Action on behalf of themselves individually, and on behalf of a purported class of affected individuals. Brooks Decl. Ex. A.  Although unartfully drafted, the Arizona Complaint alleged three causes of action under Title VII: (1) disparate treatment; (2) hostile work environment; and (3) retaliation. *See id.*  On December 2, 2022, Raytheon filed a motion to dismiss the Arizona Complaint for failure to state a claim.  *Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177, at *4 (D. Az. Feb. 27, 2023).[6]

On February 27, 2023, the Arizona District Court dismissed the Arizona Complaint, ***with prejudice***.  *Id.* at *19.  The District Court held that "Plaintiffs' overlapping allegations lack the legal and factual support to state a Title VII claim."  *Id.* at *19.  The Arizona District Court held that the Arizona Plaintiffs could not state a disparate treatment claim because

> [a]ll vaccination-exempt employees were treated the same,
> regardless of the reason for the exemption.  The vaccination
> mandate never mentioned religion and was therefore facially
> neutral, and Plaintiffs have not established that Defendant had a
> discriminatory intent in either issuing the vaccination mandate or
> implementing health and safety protocols for vaccination-exempt
> employees.

---

[6] A copy of the Arizona District Court's decision is also annexed as **Exhibit B** to the Brooks Declaration.

7

315454821v.2

*Id.* at \*13-14.  Although the Arizona District Court held that the foregoing was sufficient to dismiss the claim, it held also that "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were," particularly since some of the Arizona Plaintiffs objected to vaccination "not because of religious reasons, but for medical reasons."  *Id.* at \*14. Even if the Arizona Plaintiffs had adequately alleged membership in a protected class, the District Court held that "they still fail to demonstrate that they were treated any differently from other vaccination-exempt employees."  *Id.*

The Arizona District Court next held that "Plaintiffs fail to show they were members of a protected class" and had not, in any event, met the "demanding standard" for a hostile work environment claim.  *Id.* at \*15.  The District Court found that "Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear masks and test weekly for COVID-19."  *Id.*  The District Court found Plaintiffs' allegation that requiring masking and testing created a hostile work environment "shocking" in light of the fact that COVID-19 "has claimed the lives of over one million Americans, and counting."  *Id.* at \*16. The District Court further held that masking requirements "do[] not create a 'scarlet letter' effect because the employees could be vaccination-exempt for a multitude of reasons" other than religion, "or the masking employees could be vaccinated but simply want the added facial protection."  *Id.*  The District Court held that email reminders and signage regarding the 2021 Policy were "facially neutral" communications "visible to all Raytheon employees," which, "combined with the reasonable safety accommodations for vaccination-exempt employees, does not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim."  *Id.* at \*16-17.

8

Finally, with respect to retaliation, the Arizona District Court again held that "Plaintiffs have not established that they were members of a protected class or were engaging in protected activity." *Id.* at *17. The Arizona District Court further held that even if the Arizona Plaintiffs had done so, they did not "establish a causal link between [their] protected activity and any adverse employment action." *Id.* at *17. As the Arizona District Court held:

> Plaintiffs admit in their Complaint … [that] they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for cause of Plaintiffs' termination. Instead, the but-for cause of Plaintiffs' termination was Plaintiffs' refusal to comply with the safety conditions for vaccination exempt employees.

*Id.* at *17-18.

The District Court concluded that, in light of the Arizona Plaintiffs' binding judicial admissions in the Arizona Complaint, "any amendment to the Complaint would be futile. Therefore, dismissal of the Complaint with prejudice is appropriate." *Id.* at *18-19. Raytheon had also moved to strike the Arizona Plaintiffs' class allegations, but because the Arizona District Court dismissed the Arizona Plaintiffs' individual claims with prejudice, it did not address Raytheon's other motion. *Id.* at *19.

The Arizona Plaintiffs appealed to the Ninth Circuit. ECF No. 16 ¶ 70. On April 29, 2024, the Ninth Circuit unanimously affirmed. *Leake v. Raytheon Techs. Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024).[7] The Arizona Plaintiffs next sought review from the U.S. Supreme Court, but the Supreme Court denied their petition for a writ of certiorari on October

---

[7] A copy of the Ninth Circuit's decision is also annexed as **Exhibit C** to the Brooks Declaration.

21, 2024.  ECF No. 16 ¶ 71; *Leake v. Raytheon Technologies Corp.*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).

### Plaintiffs' Receive Right-to-Sue Letters from the EEOC

At various times during the pendency of the Arizona Action, each of the Plaintiffs received a right-to-sue letter from the EEOC.  Mr. Garza was the first, on October 3, 2022, followed by Ms. Grace on October 13, 2022; Ms. Leake on October 24, 2022; Mr. Stein on October 26, 2022; Ms. Zepeda on December 13, 2022; Mr. Sublett on April 13, 2023; Ms. Hernandez on January 2, 2024; and Mr. Heyser on August 5, 2024.  Brooks Decl. Exs. D-K.[8]

### Plaintiffs Improperly Commence This Action

Soon after the U.S. Supreme Court denied the Arizona Plaintiffs' petition for a writ of certiorari, Plaintiffs commenced this action on November 20, 2024.  ECF No. 1.  After Raytheon's original motion for sanctions was fully-briefed (*see* ECF No. 15), Plaintiffs filed an Amended Complaint on February 14, 2025.  ECF No. 16.  The Amended Complaint is based upon Plaintiffs' allegation that they "requested religious accommodations to RTX's COVID-19 vaccine mandate," and in response, Raytheon "impos[ed] a testing, masking, and travel restriction policy which," for reasons not explained anywhere in the Complaint, "also violated Plaintiffs' religious beliefs."  *Id.* ¶¶ 1-2.  As in the Arizona Action, Plaintiffs allege that Raytheon "terminated or constructively discharged them in violation of Title VII."  *Id.* ¶ 4.

The Amended Complaint's allegations regarding the Arizona Plaintiffs are nearly identical in many respects to those in the Arizona Complaint:

---

[8] The Court may take judicial notice of these right-to-sue letters.  *See Davis v. Navy Fed. Credit Union*, 2012 U.S. Dist. LEXIS 2649, at *7-8 (E.D. Va. Jan. 10, 2012) (court may consider right-to-sue letters, even if not referenced in the complaint, because they are nonetheless "integral to the Complaint's administrative history" and are "public documents of which the Court may take judicial notice"; dismissing complaint, with prejudice, as untimely).

10

315454821v.2

| Plaintiff Kristen Grace | |
| --- | --- |
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Grace was employed by Defendant for over 18 years and received various promotions and pay increase. She had no prior disciplinary issues with Defendant." Brooks Decl. Ex. A ¶ 38. | "Kristen Grace was employed as a Senior Engineer, Design Engineer by RTX for more than 18 years and consistently received outstanding reviews." ECF No. 16 ¶ 16. |
| "On or about February 25, 2021, Plaintiff requested a transfer to a remote position, due to her sincere religious objections and medical disability that precluded her from complying to Defendant's COVID-19 policy. Defendant acknowledged Plaintiff's ADA disability but dismissed Plaintiff's right to assert a religious exception." Brooks Decl. Ex. A ¶ 39. | "On February 25, 2021, Ms. Grace requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking and testing policy that Defendant held for unvaccinated individuals. Upon learning that no religious accommodation was available for the masking and testing policy, on March 23, 2021, Ms. Grace reluctantly submitted an ADA accommodation request to the masking and testing policy. Ms. Grace continued to work remotely while awaiting RTX's determination on a permanent remote position." ECF No. 16 ¶¶ 17-19. |
| "On or about May 7, 2021, Defendant denied Plaintiff's request for a remote position as a reasonable accommodation and retaliated against Plaintiff by putting her on involuntary unpaid medical leave, prohibiting Plaintiff from seeking any outside income while on leave." Brooks Decl. Ex. A ¶ 40. | "On May 7, 2021, RTX denied Ms. Grace's request for a permanent remote position and put her on permanent unpaid medical leave." ECF No. 16 ¶ 20. |
| "On or about September 24, 202[1], Plaintiff secured a remote position and submitted a religious exemption for the COVID-19 vaccine mandate." Brooks Decl. Ex. A ¶ 41. | "On September 22, 2021, Ms. Grace secured a permanent remote position with RTX through her own independent efforts. She immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced on September 15, 2021." ECF No. 16 ¶¶ 22-23. |
| "On or about November 4, 2022, Plaintiff's religious exemption was denied based on Plaintiff's medical disability." Brooks Decl. Ex. A ¶ 42. | "Despite her approved ADA accommodation for her medical disability, RTX denied her religious accommodation request for the testing and masking requirements." ECF No. 16 ¶ 24. |
| "After months of Defendant's continuous harassment, coercion, threats, and humiliation, on or about January 31, 2022, Defendant terminated Plaintiff's employment for non- | "RTX terminated Ms. Grace on January 31, 2022." ECF No. 16 ¶ 25. |

| compliance to [sic] Defendant's COVID-19 mandate." Brooks Decl. Ex. A ¶ 43. | |
|---|---|
| **Plaintiff J. Michael Heyser** | |
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Heyser was a longtime employee (14 years) and USAF veteran who left a career as an airline pilot to join Raytheon so he could help deliver solutions to his brothers in arms." Brooks Decl. Ex. A ¶ 44. | "J. Michael Heyser began his career with RTX in 2008. Over 12 years, he worked his way up to his 'dream job' as a Warfighter School Director, where he planned to stay until retirement." ECF No. 16 ¶¶ 40-41. |
| "Plaintiff never agreed to any medical procedures as a condition to employment. Defendant, without a published policy, imposed such a requirement…. Unable to tolerate what had become a hostile work environment, Plaintiff resigned on Jan 14, 2022." Brooks Decl. Ex. A ¶¶ 49-52. | "He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs, which he communicated to RTX. RTX constructively discharged Mr. Heyser on January 14, 2022." ECF No. 16 ¶¶ 42-43. |
| **Plaintiff Lisa Leake** | |
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Leake was employed by Defendant for over 13 years and received various promotions and yearly pay increases. She had no prior disciplinary issues." Brooks Decl. Ex. A ¶ 34. | "Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility." ECF No. 16 ¶ 45. |
| "On or about November 1, 2021, in good faith and compliance to policy, Plaintiff submitted a request for religious accommodation." Brooks Decl. Ex. A ¶ 35. | "Ms. Leake requested a religious accommodation to the COVID-19 vaccine." ECF No. 16 ¶ 46. |
| "On or about December 15, 2021, religious accommodation was approved with a with weekly testing stipulation, which was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs. This non-negotiable testing requirement, dictated by Defendant, was only required of a small set of employees and tests were the most invasive EUA versions, that have since been recalled by the FDA." Brooks Decl. Ex. A ¶ 36. | "RTX required her to test instead, which also violated her religious beliefs." ECF No. 16 ¶ 47. |
| "On or about February 1, 2022, Plaintiff was terminated for non-compliance with the Defendant's Covid 19 mandate." Brooks Decl. Ex. A ¶ 37. | "She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022." ECF No. 16 ¶ 49. |
| **Plaintiff Christopher Stein** | |
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Stein was employed by | "Plaintiff Christopher Stein worked for RTX |

12

315454821v.2

| | |
|---|---|
| Defendant for over 20 years, receiving multiple promotions and pay increase[s]. He had no prior disciplinary issues with Defendant." Brooks Decl. Ex. A ¶ 53. | for over 20 years." ECF No. 16 ¶ 51. |
| "Defendant recommended a religious exemption which had three non-negotiable, mandated 'accommodations' dictated by Defendant (masking, social distancing, weekly testing)." Brooks Decl. Ex. A ¶ 55. | "He requested a religious accommodation to the COVID-19 vaccine mandate. RTX responded that he would have to test, which also violated his religious beliefs." ECF No. 16 ¶¶ 52-53. |
| "Plaintiff repeatedly worked with managerial staff and Defendant representatives to attempt an acceptable resolution to discriminatory and invasive weekly testing, but was told Defendant's testing mandate 'accommodations' were non-negotiable. Plaintiff was terminated by Defendant for non-compliance to Defendant's COVID-19 mandate ON January 31, 2022." Brooks Decl. Ex. A ¶¶ 59-60. | "Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022." ECF No. 16 ¶ 55. |

| Plaintiff Leslie Zepeda | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Zepeda was employed by Defendant for six years, earning two promotions and multiple awards." Brooks Decl. Ex. A ¶ 61. | "Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services." ECF No. 16 ¶ 63. |
| "Plaintiff submitted vaccination status and a religious accommodation based on sincerely held faith for the COVID 19 vaccine and a medical accommodation to submit a saliva only test for COVID 19….. Defendant refused test results unless accompanied by a waiver of HIPPA [sic] rights presented as RTX COVID Testing Privacy Consent Form." Brooks Decl. Ex. A ¶¶ 63-65. | "She requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive [sic] her rights under HIPAA." ECF No. 16 ¶ 64. |
| "In retaliation, Zepeda's employment was wrongfully terminated by Raytheon Technologies due to not agreeing waiving/ consenting to waive HIPPA [sic] rights on February 2. 2022." Brooks Decl. Ex. A ¶ 66. | "RTX terminated her on February 4, 2022." ECF No. 16 ¶ 66. |

The Amended Complaint contains similar allegations regarding the Additional Plaintiffs.

With respect to Mr. Garza, Plaintiffs allege that he "requested a religious accommodation request

to RTX's testing mandate that RTX denied." ECF No. 16 ¶ 28. "On November 22, 2021, Mr.

13

Garza informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing." *Id.* ¶ 29. Plaintiffs allege, without elaboration, that "[h]e suffered religious and spiritual injury as a result of RTX's refusal to accommodate his religious beliefs." *Id.* ¶ 30. Plaintiffs allege that Ms. Hernandez "requested a religious accommodation for the vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation." *Id.* ¶ 36. Plaintiffs do not explain why testing would violate Ms. Hernandez's conscience. *See id.* They allege that "[b]ecause she would not violate her conscience, RTX terminated Ms. Hernandez on January 31, 2022." *Id.* ¶ 37. Plaintiffs allege that Mr. Sublett "submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing," for unexplained reasons, and so "RTX constructively discharged Mr. Sublett on December 4, 2021." *Id.* ¶¶ 58, 60.

Plaintiffs concede that "*[a]ll plaintiffs* submitted their claims as part of a class complaint submitted on September 24, 2022," *i.e.*, the Arizona Action, and "[t]hat claim was dismissed." *Id.* ¶¶ 68-69 (emphasis added). Plaintiffs allege that "[t]he putative class appealed the decision and the 9th Circuit Court of Appeals upheld the decision." *Id.* ¶ 70. They further allege that "Plaintiffs filed a petition for a writ of certiorari with the U.S. Supreme Court which it declined on October 21, 2024." *Id.* ¶ 71.

Plaintiffs assert a single cause of action, for failure to accommodate under Title VII. *See* ECF No. 16 at Count I. They seeks damages of "8 million dollars," plus punitive damages, interest, and attorneys' fees. ECF No. 16 ¶ 79.

14

315454821v.2

**Raytheon Attempts to Avoid Motion Practice, but Plaintiffs Refuse**

On December 9, 2024, Raytheon's counsel wrote to Plaintiffs' counsel, stating that Plaintiffs and their counsel had violated Rule 11 because the Complaint is both barred by *res judicata* and is time barred.  Brooks Decl. Ex. L.  On December 13, 2024, Plaintiffs' counsel responded by asserting that the Complaint complied with Rule 11 and that if Raytheon filed this motion, **Raytheon** would be subject to Rule 11 sanctions.  Brooks Decl. Ex. M.  Plaintiffs' counsel did not address the fact that Plaintiffs' claims were time-barred.  *See id.*  With respect to *res judicata*, Plaintiffs' counsel argued that Plaintiffs' claims were not barred under *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984).  *See id.*  On Monday December 16, 2024, Raytheon's counsel responded by noting that *Cooper* confirms that the Arizona Plaintiffs' claims in particular are barred by *res judicata*, and that Plaintiffs' counsel failed to address the fact that all Plaintiffs' claims are time barred.  *See id.*  Plaintiffs' counsel did not respond.

On December 31, 2024, Raytheon served Plaintiffs with a copy of their Rule 11 motion papers.  Brooks Decl. Ex. N.  Plaintiffs' counsel failed to withdraw the Complaint within 21 days.  Accordingly, Raytheon filed its Rule 11 motion on January 24, 2025.  ECF No. 4.  Briefing was completed on that motion on February 13, 2025.  ECF No. 15.  Plaintiffs filed their Amended Complaint the next day.  ECF No. 16.  Based upon the filing of the Amended Complaint, this Court denied Raytheon's original Rule 11 motion as moot.  ECF No. 21.

On March 3, 2025, Raytheon served its renewed Rule 11 motion on Plaintiffs' counsel.  Brooks Decl. Ex. O.  Plaintiffs failed to withdraw the Amended Complaint within 21 days, and so Raytheon has now filed its renewed motion with the Court.

315454821v.2

## ARGUMENT

Rule 11 authorizes a trial court to impose "an appropriate sanction" upon parties who have violated the requirements of Rule 11(b).  When filing a pleading with the Court, a party certifies under Rule 11(b) that to the best of his or her knowledge, information, and belief—formed after an inquiry reasonable under the circumstances—*all* of the following conditions are met:

> **(1)    Proper purpose** — It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(2)    Legal merit** — The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>
> **(3)    Evidentiary support** — The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)-(3).

This certification creates an ***affirmative duty of investigation*** as to both law and fact before signing and submitting any pleading, motion, or other paper.  *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 550 (1991).  The Fourth Circuit has recognized that in deciding whether a Rule 11 sanction is warranted, courts must apply a standard of "objective reasonableness."  *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 872 F.2d 984, 987 (4th Cir. 1987); *see also Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, 2009 U.S. Dist. LEXIS 73903, at *9 (E.D. Va. Aug. 20, 2009).

Under Rule 11, "a complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to Rule 11 sanctions."  *Baker v. Booz Allen Hamilton, Inc.*,

16

358 F. App'x. 476, 483-484 (4th Cir. 2009).  Thus, "[t]o be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint." *Brubaker*, 943 F.2d at 1373.

Here, Plaintiffs and their counsel knew that the Complaint was frivolous for two separate reasons.  First, Plaintiffs and their counsel knew that, at the very least, the claims of the Arizona Plaintiffs were barred by *res judicata*.  Second, Plaintiffs and their counsel knew that all Plaintiffs' claims were time-barred.

"If Rule 11 was violated, the violation was complete when the complaint was filed." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987); *see also City of Jacksonville v. Jackson Hosp. Holdings, LP*, 2024 U.S. App. LEXIS 11759, at *12 (11th Cir. May 15, 2024) ("a Rule 11 violation vests the moment a frivolous complaint is filed, and the harm to the judiciary occurs even if the careless plaintiff quickly dismisses the action").  Accordingly, when a plaintiff files an original complaint that is frivolous, a plaintiff can be sanctioned even if the plaintiff withdraws that complaint.  *See, e.g., Samsung Elecs. Co. v. Rambus Inc.*, 440 F. Supp. 2d 512, 519-20 (E.D. Va. 2006) ("a request for sanctions…under Rule 11 [i]s a collateral issue which a federal court has jurisdiction to resolve, even when the action is no longer pending").

Here, even if Plaintiffs had somehow cured the defects in their original Complaint by filing the Amended Complaint, they would still be subject to Rule 11 sanctions.  The Amended Complaint does not, and cannot, cure the defects in the original Complaint, however.  No amendment can change the fact that this action is barred by *res judicata* and is time-barred.  Worse, Plaintiffs were well-aware that their Amended Complaint was frivolous, since it was filed ***after*** Raytheon's original Rule 11 motion was fully briefed.  *See* ECF Nos. 15, 16.

17

Plaintiffs' continued maintenance of, and doubling down on, this lawsuit is egregious. They should be sanctioned pursuant to Rule 11(c).

### A. Plaintiffs Should be Sanctioned Because the Arizona Plaintiffs' Claims are Barred by *Res Judicata*.

Plaintiffs' Complaint is barred because the Arizona Plaintiffs' claims arising from the same exact facts were already dismissed with prejudice in the Arizona Action and affirmed by a unanimous Ninth Circuit. *See* ECF No. 16 ¶¶ 68-71; *see* pgs. 4-14, *supra*.

"Courts have granted Rule 11 sanctions where the doctrine of res judicata barred the claims." *Oudeh v. Goshen Med. Ctr.*, 2024 U.S. Dist. LEXIS 147016, at *12-13 (D.N.C. Aug. 16, 2024) (collecting cases); *see also, e.g.*, *Reaves v. Roanoke Redevelopment & Hous. Auth.*, 2009 U.S. Dist. LEXIS 10703, at *19-20 (W.D. Va. Feb. 12, 2009) (same).

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided ***or could have been decided*** in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added). Under this standard, "[t]he test for deciding 'whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation '***arises out of the same transaction or series of transactions*** as the claim resolved by the prior judgment.'" *Id.* at 162 (emphasis added). Accordingly, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.'" *Id.*

Here, the Arizona Plaintiffs' claims in this action arise out of the exact same facts as the Arizona Action: their refusals to comply with the testing, masking, and social distancing required for their exemptions from the vaccination requirement of the 2021 Policy. *See* pgs. 4-14, *supra*. The Arizona Plaintiffs are suing in this action under the exact same statute at issue in the Arizona

18

Action, Title VII. *See id.* Plaintiffs have even argued that the Arizona Action "tolled" their time to commence this action, which is an admission that the Arizona Action and this action arising from the same facts and circumstances. *See* EF No. 14 at 5-10. Because it was based on the same factual circumstances, the Arizona Plaintiffs could have asserted their Title VII claim for failure to accommodate in the Arizona Action.

In fact, Plaintiffs' counsel argued to the Ninth Circuit in the Arizona Action, after merits briefing had been completed, that the Ninth Circuit should re-open briefing because the Arizona Plaintiffs' prior counsel had failed in the Arizona District Court "to plead a claim under Title VII for failure to accommodate Plaintiffs' religious beliefs, which is the most relevant and applicable claim Plaintiffs had." Brooks Decl. Ex. P at 6.[9] The Arizona Plaintiffs argued to the Ninth Circuit that they wished they had "inclu[ded] a Title VII Failure to Accommodate Claim" in the Arizona Complaint. *Id.* at 9; *see also id.* at 16. In other words, the Arizona Plaintiffs affirmatively represented to the Ninth Circuit that a failure to accommodate claim *could have been asserted in the Arizona Action*, and they wanted an opportunity to do so.

There is no serious dispute that the Arizona Plaintiffs' claims are barred by *res judicata*. Plaintiffs' citation to *Cooper*, *supra*, **confirms that the Arizona Plaintiffs' claims are barred**. According to Plaintiffs, *Cooper* stands for the proposition that where a class action complaint is dismissed, individual intervenors are barred from suing again, but the other class members, including the original named plaintiffs, are not. *See* ECF No. 14 at 5-7. Counsel cannot reasonably believe this, however, because a plain reading of *Cooper* refutes the argument.

*Cooper* held that a decision regarding class-wide allegations, rather than individual allegations, does not bar individual class members from later suing based upon their individual

---

[9] Again, the Court can take judicial notice of this court filing from the Ninth Circuit. *See* n.3, *supra*.

19

factual circumstances. *Cooper*, 467 U.S. at 880. But where "the individual claims" of named plaintiffs "have been finally decided in the [defendant's] favor," those individuals are barred from suing again. *Id.* at 873-74 and n.7. Although Plaintiffs have emphasized the fact that the individuals who were barred in *Cooper* became named plaintiffs by intervening after commencement of the action, the Supreme Court did not hold that *res judicata* only applies to intervenors; that would make no sense because when parties intervene, they "assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted." *D.C. v. Merit Systems Protection Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985). Rather, the Court held that *res judicata* barred the intervening named plaintiffs because their "individual claims," as opposed to class claims, were finally decided by the district court. *Cooper*, 467 U.S. at 473-74 and n.7.

That is exactly what happened here. No class was ever certified in the Arizona Action; the District Court *specifically declined* to address class allegations; and there was no generalized, class-wide holding. *See Leake*, 2023 U.S. Dist. LEXIS 32177 , at *19. The District Court examined the *individualized allegations* of the Arizona Plaintiffs and determined that their *individual claims must be dismissed with prejudice*. *See id.* at *13-19. "[T]he individual claims of each of the" Arizona Plaintiffs "have been finally decided in [Raytheon's] favor." *See Cooper*, 467 U.S. at 873-74.

Plaintiffs have not cited *to a single case* holding that the dismissal of named plaintiffs' *individual claims* in a putative class action does not have preclusive effect as to those named plaintiffs. It should go without saying that the law is to the contrary. When a class action is dismissed, the dismissal "of the named employees' individual claims *is binding as to those employees*." *Muhammad v. Giant Food*, 108 F. App'x 757, 765 n.5 (4th Cir. 2004) (emphasis

20

315454821v.2

added); *see also, e.g., Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir. 1985) (dismissal of class action "***does not affect application of res judicata against the named plaintiffs***" (emphasis added)).

Again, Plaintiffs do not dispute that this action arises out of the same facts and circumstances as the Arizona Action. *See* ECF No. 14 at 5-7. They cite no law holding that where the individual claims of the named plaintiffs are adjudicated to conclusion, those named plaintiffs are permitted to bring another suit based on the same facts and circumstances. *See id.* Nor could they: it is a basic point of our legal system that when an individual's claim is dismissed by a court with prejudice, that individual cannot bring a subsequent suit based upon the same facts and circumstances. Rule 11 sanctions are warranted.

## B.  All Plaintiffs' Claims are Time-Barred.

Rule 11 sanctions are also warranted because ***all*** Plaintiffs' claims are time-barred. *See, e.g., Morning Star Baptist Church v. James City County Police,* 480 F. Supp. 2d 853, 859-60 (E.D. Va. 2007) (dismissing case based upon *res judicata* and statute of limitations, and awarding Rule 11 sanctions where "[t]he sheer passage of time…makes clear that [plaintiff's] most recent claim was frivolous").

"Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter from the EEOC." *Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019). "It is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims." *Id.*; *see also Davis*, 2012 U.S. Dist. LEXIS 2649, at *7-8, 14-16 (dismissing complaint, with prejudice, where plaintiff failed to bring claims within 90 days of receiving right-to-sue letter).

21

315454821v.2

Here, it is indisputable that none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters.  As set forth above, many of the Plaintiffs received their right-to-sue letters more than ***two years ago***, in late 2022.  *See* pg. 9, *supra*; Brooks Decl. Exs. D-K.  The most recent right-to-sue letter, issued to Mr. Heyser on August 5, 2024, required him to file suit no later than November 5, 2024.  Brooks Decl. Ex. K.  Yet this action was not commenced until November 20, 2024.  ECF No. 1.

In response to Raytheon's original Rule 11 motion, Plaintiffs contended that their claims were "tolled" by the Arizona Action because all Plaintiffs were members of the putative class.  ECF No. 14 at 9-10.  They relied (ECF No. 14 at 9-10) on a limited exception to the statute of limitations outlined in *American Pipe & Constr. Co. v. Utah*, 414 U. S. 538 (1974).  Under *American Pipe*, filing a class action tolls the statute of limitations for the individual claims of putative class members "***until the class action is denied***."  *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 210 (4th Cir. 2006) (emphasis added).  Plaintiffs did not identify when the tolling period here purportedly ended, or when they were required to bring suit once the tolling period ended.  *See* ECF No. 14 at 9-10.  There is a good reason for this omission: even assuming *American Pipe* tolling applies, Plaintiffs claims ***are still untimely***.

As the Fourth Circuit has explained, "the *American Pipe* rule provides a ***narrow exception*** to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, ***for whatever reason***."  *Bridges*, 441 F.3d at 212 (emphasis added).  Once the class action is dismissed ***for whatever reason***, the tolling ends.  *See id.* at 212-13; *see also Shelton v. Collins Career Center*, 2020 U.S. Dist. LEXIS 231498, at *22 (S.D. W. Va. Dec. 8, 2020) (limitations period resumed when class action "was resolved").

22

Absent entry of a stay pending appeal, federal court judgments are effective after 30 days. *See* Fed. R. Civ. P. 62. "The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered." *In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006). Accordingly, *American Pipe* tolling ***does not continue while an appeal is pending***; "the statute of limitations begins running again as soon as class certification is denied…. At that point, the parties are on notice that they must take steps to protect their rights or suffer the consequences." *Id.*; *see also Bridges*, 441 F.3d at 212 (tolling ends upon denial "for whatever reason"); *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013) ("If the Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights"); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("Therefore, it is clear…that if the district court denies class certification under Rule 23, tolling of the statute of limitations ends"); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) ("***[W]hen the suit is dismissed***…***the statute resumes running for the class members***" (emphasis added)); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000) ("[W]e hold that tolling ends when class certification is denied ***in the trial court***" (emphasis added)); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (en banc) ("If class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class. In order to protect their rights, such individuals must seek to intervene in the pending action…, ***or file a separate individual action before the time remaining in the limitations period expires***" (emphasis added)); *Andrews v. Orr*, 851 F.2d 146, 149-50 (6th Cir. 1988) (holding that the suit "ceased to be a class action," and

23

315454821v.2

tolling ended, upon entry of order denying class certification); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) ("the statute will resume running when class certification is denied"); *Womack v. UPS*, 311 F. Supp. 2d 492, 496-97 (E.D.N.C. 2004) ("Many Circuit Courts of Appeals have held that tolling ceases directly upon the denial of class certification, and does not extend…***throughout the appeals process***" (emphasis added)).

Even assuming *arguendo* that Plaintiffs—including the Arizona Plaintiffs whose claims are barred by *res judicata*—were entitled to tolling, the statute of limitations resumed when the Arizona Action was dismissed on February 27, 2023 or, being generous to Plaintiffs, 30 days thereafter in accordance with the automatic stay in Rule 62(a), *i.e.*, March 29, 2023. *See Leake*, 2023 U.S. Dist. LEXIS 32177, at *19. Plaintiffs whose right-to-sue letters were issued before March 29, 2023—Mr. Garza, Ms. Grace, Ms. Leake, Mr. Stein, and Ms. Zepeda—had 90 days, *i.e.*, until June 27, 2023, to file a new suit. The other Plaintiffs, whose right-to-sue letters came ***after*** the Arizona Action was dismissed with prejudice, had 90 days from receipt of the letter to file: July 12, 2023 for Mr. Sublett; April 1, 2024 for Ms. Hernandez; and November 4, 2024 for Mr. Heyser. But, again, they did not sue until November 20, 2024. ECF No. 1.

Plaintiffs' counsel had an affirmative duty to research the law on this point. *Business Guides*, 498 U.S. at 550. Counsel should have reviewed the Fourth Circuit's decision in *Bridges* and other authorities such as *Copper Antitrust*, *Giovanniello*, *Taylor*, *Culver*, *Stone Container*, *Armstrong*, *Andrews*, and *Fernandez*, *supra*. Indeed, a review of cases that cite *American Pipe* reveals in mere minutes that Plaintiffs' tolling argument is not viable. Counsel knew or should have known that there was no good-faith basis upon which Plaintiffs could assert that their claims in this action are timely.

24

315454821v.2

Even if they could get around *res judicata*, and they cannot, Plaintiffs' claims are time barred. Plaintiffs and their counsel knew, or should have known, this. Sanctions are warranted.

## C. The Court Should Dismiss the Action and Issue Monetary Sanctions.

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* Here, at a minimum, the Court should issue a nonmonetary sanction by dismissing the Complaint, with prejudice. *See, e.g., Amr v. Va. State Univ.*, 2011 U.S. Dist. LEXIS 110747, at \*67 (E.D. Va. Aug. 11, 2011) (dismissing action **with prejudice** as a Rule 11 sanction).

Raytheon also submits, however, that an award of attorneys' fees and other expenses is warranted based upon the egregious nature of Plaintiffs' conduct, including doubling-down on an original Complaint they knew was frivolous by filing an Amended Complaint. "The 'primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for costs in defending a frivolous suit.'" *Instant Tax Serv. 10060 v. TCA Fin., LLC*, 2009 U.S. Dist. LEXIS 72277, at \*8-9 (D. Md. Aug. 14, 2009) (citing *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990)) (imposing "a sanction of $30,000 to be paid jointly and severally by [plaintiff's] attorneys, and an additional sanction of $10,000 to be paid by [plaintiff] individually"). Monetary sanctions are appropriate against counsel and parties where, *inter alia*, "it should have been abundantly clear even to an experienced attorney that all the claims raised

25

315454821v.2

in the suit were subject to…*res judicata*," yet, "[i]nstead of voluntarily dismissing the suit…[they] forged ahead…." *Id.* at *10-11.

As established above, Plaintiffs knew that their Complaint was barred and, accordingly, frivolous. Raytheon tried repeatedly to avoid motion practice, first by writing a letter to Plaintiffs' counsel; then by responding to Plaintiffs' counsel reliance upon *Cooper*; and finally by serving Plaintiffs with a copy of this motion 21 days before filing. At every turn, Plaintiffs refused to withdraw the Complaint and then doubled-down by filing an Amended Complaint. As a result of their pre-litigation efforts at resolution; the drafting of the original Rule 11 motion and this renewed motion; and the drafting of Raytheon's original motion to dismiss and subsequent motion to dismiss the Amended Complaint, Raytheon is expected to incur attorneys' fees and expenses of $45,000, including any oral argument that may be scheduled by the Court. Brooks Decl. ¶ 19. The Court should accordingly sanction Plaintiffs and their counsel in that amount.

CONCLUSION

The Court should grant Raytheon's motion for sanctions, dismiss Plaintiffs' Complaint with prejudice, and award monetary sanctions in favor of Raytheon.

Dated: March 27, 2025

Respectfully submitted,

By:    */s/ Samantha L. Brooks*
Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

26

315454821v.2

Dawn R. Solowey (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (admitted *pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

315454821v.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of March 2025, the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

*Counsel for Plaintiffs*

 */s/ Samantha L. Brooks*
Samantha L. Brooks
 VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

315454821v.2