**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

KRISTEN GRACE, FRANCISCO
GARZA, ROSSANA HERNANDEZ,
J. MICHAEL HEYSER, LISA LEAKE,
CHRISTOPHER STEIN, CHRISTOPHER
SUBLETT, and LESLIE ZEPEDA

    **Plaintiffs,**

v.

RTX CORPORATION f/k/a RAYTHEON
TECHNOLOGIES CORPORATION,

    **Defendant.**

Civil Action No. 4-cv-2083-CMH-WBP

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION
FOR SANCTIONS PURSUANT TO RULE 11**

COME NOW Plaintiffs Kristen Grace, Francisco Garcia, Rossana Hernandez, J. Michael
Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively,
"Plaintiffs"), by their undersigned attorney, and file this response to defendant RTX Corporation
f/k/a Raytheon Technologies Corporation's ("Raytheon") motion for sanctions pursuant to Rule 11.

**FACTUAL BACKGROUND**

Kristen Grace was employed as a Senior Engineer by Raytheon. Ms. Grace had a sincerely
held religious belief against Raytheon's masking policy and requested a religious accommodation
for that belief. Raytheon refused to make any accommodation for Ms. Grace's sincerely held
religious belief and ultimately fired her for not abandoning her religious convictions and adhering to
the masking policy.

Francisco Garza was a Principal Specialist, Misson / Quality Assurance for Raytheon. Mr.

1

Garza had a sincerely held religious belief against Raytheon's COVID testing mandate. Mr. Garza submitted to the testing mandate under duress and suffered religious and spiritual injury because of Raytheon's refusal to accommodate his religious beliefs.

Rossana Hernandez was an employee of Raytheon. She requested a religious accommodation from Raytheon's vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation. Because she would not violate her conscience, Raytheon terminated Ms. Hernandez.

J. Michael Heyser began working for Raytheon in 2008. He requested religious accommodations to the vaccine mandate and the testing, masking, and travel restrictions. Raytheon did not offer any accommodation for the testing, masking, and travel restrictions to which Mr. Heyser objected. Raytheon constructively discharged Mr. Heyser.

Lisa Leake was a Senior Systems Engineer. She requested a religious accommodation to Raytheon's COVID vaccine mandate. In lieu of the vaccine mandate, Raytheon required her to test regularly for COVID instead, which violated her religious beliefs. She was unwilling to violate her religious beliefs to keep her job, so Raytheon fired her.

Christopher Stein worked for Raytheon for over 20 years. Despite repeated efforts to work to find a mutually agreeable alternative, Raytheon fired him for refusing to violate his religious beliefs by taking regular COVID tests.

Christopher Sublett was a long-term employee for Raytheon. When he realized that his work would require him to violate his religious beliefs, he refused, and Raytheon constructively discharged him.

Leslie Zepeda was a Principal Specialist, Engineering Services for Raytheon. She requested a religious accommodation request but could not in good conscience submit her testing results in a in

2

the manner that Raytheon prescribed. Raytheon terminated her.

Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda, were named putative class members, and Francisco Garcia, Rossana Hernandez, and Christopher Sublett unnamed putative class members ("Plaintiffs" herein) in a class action complaint against Raytheon in the District of Arizona, where they alleged Discrimination in violation of Title VII, Wrongful Termination in violation of Title VII, and Retaliation in violation of Title VII. The District Court dismissed the complaint with prejudice, the Ninth Circuit affirmed, and the Supreme Court denied certiorari.

After receiving the decision from the Supreme Court, and at the request of Plaintiffs, undersigned counsel conducted considerable research on the possibilities of moving forward after denial of the Plaintiffs' class action suit and reported back to the Plaintiffs.

Plaintiffs then brought this present suit against Raytheon in their individual capacities for failure to make reasonable accommodation for their religious beliefs in violation of their rights under Title VII. Again, undersigned counsel did so after considerable research into both the facts and the law. Counsel developed a sincere belief in the defensibility and correctness of his legal conclusions and offered them in good faith. Defendants then filed a motion for Rule 11 sanctions. Plaintiffs then amended their complaint, and this Court denied Defendant's motion for mootness. Defendants then filed a renewed motion for Rule 11 sanctions.

## ARGUMENT

Fed R. Civ P. 11 authorizes a trial court to impose "an appropriate sanction" upon parties who have violated the requirements of Rule 11(b). Defendant Raytheon claims that Plaintiffs have violated Rule 11 by filing this suit which, they claim, Plaintiffs knew were *res judicata* and time barred. Raytheon is mistaken.

### A. Legal Standard

3

"If an attorney's conduct appears to fall within the scope of Rule 11, the court must first examine the actions at issue according to a standard of objective reasonableness. At this stage, the inquiry focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified. If the standard of objective reasonableness is unsatisfied, sanctions are mandatory." *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

In the cases that Defendants cite for the legal standard for Rule 11 sanctions, the courts describe the attorneys' actions as follows:

- "[W]e can see absolutely no objective indication that plaintiff's counsel ever intended to seek a modification of the law. Indeed, counsel's statements at oral argument indicate that the action was filed in a speculative effort to find someone financially liable for plaintiffs' injuries before the statute of limitations expired. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

- In a case where an attorney brought Rule 11 sanctions against an adverse attorney for his client's perjury, he did so despite "absolutely no evidence of involvement" in the perjury by the attorney, and "a quick reading of [case law] would have revealed that Cleveland's complaint had absolutely no chance of success under the existing precedent." *Cleveland Demolition Co. v. Azcon Scrap Corp., Div. of Gold Fields Am. Indus., Inc.*, 827 F.2d 984, 988 (4th Cir. 1987)(citations omitted).

- "[P]laintiff made factual contentions that were not only utterly misleading and unsupported by record evidence but, in some cases, outright misrepresentations […] [I]t appears clear that plaintiff uncovered no information to support its factual contentions, but nevertheless persisted in presenting such contentions as fact, in some cases without citation, and in other cases by citing evidence that actually contradicted such contentions. Plaintiff also continued advocating its dubious fraud theories despite the lack of any factual basis whatsoever." *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, Civil Action No. 2:07cv530, 2009 U.S. Dist. LEXIS 73903, at *33 (E.D. Va. Aug. 20, 2009).

Here, there is nothing similar either in kind or degree to the behavior described above. There are no misrepresentations or allegations of misrepresentations. Judging from the Defendant's motion, there appears to be no issue with Plaintiffs' representations of the facts at all.

4

Instead, what we have is a dispute about the law, with the Defendant claiming that no reasonable attorney could believe himself to be justified in undersigned counsel's interpretation of the law. Plaintiffs disagree.

### B. A reasonable attorney in like circumstances could conclude that *res judicata* does not bar Plaintiffs' claims

*Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984) provides sufficient support for Plaintiffs' actions in the present suit such that a reasonable attorney could conclude that he was justified in filing their individual claims.

Defendant argues that the doctrine of *res judicata* bars this action. This would be true if this action was a class complaint, or if the original action had been a complaint bringing forward several individuals actions. But neither is true.

Instead, Plaintiffs originally filed a class complaint as members of a putative class. The District Court dismissed the class complaint, the Ninth Circuit affirmed, and the Supreme Court denied certiorari. The Plaintiffs then pursued their individual claims in the instant action.

In *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984), the Supreme Court considered an action that the Equal Employment Opportunity Commission brought against the Federal Reserve Bank of Richmond alleging racial discrimination according to Title VII of the Civil Rights Act of 1964. *Id.* at 869. Six months after the action commenced, "four individual employees were allowed to intervene as plaintiffs. In their 'complaint in intervention,' these plaintiffs alleged that the Bank's employment practices violated 42 U.S.C. § 1981, as well as Title VII; that each of them was the victim of employment discrimination based on race; and that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race." *Id.* at 869-870.

The issue in the case, according to the Court, was "whether a judgment in a class action

determining that an employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees precludes a class member from maintaining a subsequent civil action alleging an individual claim of racial discrimination against the employer." *Id.* at 869.

The Court explained, "[c]laims of two types were adjudicated in the *Cooper* litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor. Those individual decisions do not, of course, foreclose any other individual claims. Second, the class claim that the Bank followed 'policies and practices' of discriminating against its employees has also been decided. It is that decision on which the Court of Appeals based its res judicata analysis." *Id.* at 873-874

The Court clearly delineates between four intervening, individual plaintiffs and the plaintiffs who constituted a putative class. It is careful to note that the decisions in the individual cases of the intervenors do not "foreclose any other individual claims."

The court then goes on to conclude that,

> The court erred, however, in the preclusive effect it attached to that prior adjudication. That judgment (1) bars the class members from bringing another class action against the Bank alleging a pattern or practice of discrimination for the relevant time period and (2) precludes the class members in any other litigation with the Bank from relitigating the question whether the Bank engaged in a pattern and practice of discrimination against black employees during the relevant time period. The judgment is not, however, dispositive of the individual claims the Baxter petitioners have alleged in their separate action. *Id.* at 880.

Plaintiffs here in their original complaint were trying to establish a pattern and practice of discrimination under Title VII of the Civil Rights Act, which is the essential nature of a class action claiming employment discrimination. They are not trying to do so here, nor are they bringing another class action against Defendant. Here they are instead litigating their individual claims. It is,

6

Plaintiffs submit, reasonable to conclude that the precedent set forth in *Cooper* allows the action here.

Defendant mischaracterizes the significance of the Court's treatment of the intervening plaintiffs in Cooper by attempting to treat them as "named plaintiffs." Memorandum at 19. The Court itself makes a distinction between the two groups that Defendant does not, allowing individual claims by what Defendant calls "named plaintiffs" to continue even after those class members had provided testimony in the class litigation. *Cooper*, 467 U.S. 881 (1984). The Court clearly makes a distinction between the group of named class members and the intervening parties. This is a critical distinction in *Cooper* that Defendant attempts to gloss over. *Cooper* clearly stands for the proposition that the plaintiffs here may proceed with their individual claims in this case, at least in so far as it may form the basis for a reasonable attorney to conclude that it is appropriate to bring the individual claims in this case.

*D.C. v. Merit Systems Protection Bd.*, 762 F.2d 129 (D.C. Cir.1985) does not rescue Defendant's position. In *D.C. v. Merit Systems*, a single party—Lee Lendt— intervened in order to address an appeal an award of fees from his underlying action for termination from the District of Columbia's government. The District, which was appealing the fee award, had named the Merit Systems Protection Board as the sole defendant in its appeal of the award for fees. Lendt intervened to defend the award. The Court stated in dicta that intervenors "assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted" in order to conclude that there was no problem with Lendt intervening to defend the fee award. *Id* at 132. Any issues of how his intervention might have played out in the event there was a class complaint at issue are nowhere to be found, because there was no class complaint involved in the case. If the plaintiffs here were eight intervening plaintiffs joining a

group of other individual plaintiffs in the original Arizona action, or if they were eight

intervening plaintiffs intervening in an action with a class complaint at its core, Defendant's

position might have some merit. This is not the case here, and *Cooper* is controlling. *Cooper*

stands for the proposition that class members may proceed with their individual complaints after

the dismissal of the class complaint for which they were putative class members. That is what

happened here.

### C. A reasonable attorney in like circumstances could conclude that Plaintiffs' claims are not time barred

Defendant argued for nearly 18 pages laden with italics and bold print that Plaintiffs'

complaint was *res judicata* because they had already filed an action. Defendant then reverses itself

on page 18 and claims that "it is indisputable that none of the Plaintiffs filed suit within 90 days of

receiving their right-to-sue letters."

Defendant, in fact, had not got beyond page one before making the self-contradictory

claim that,

> Five of the plaintiffs in this action—Kristen Grace, J. Michael Heyser, Lisa
> Leake, Christopher Stein, and Leslie Zepeda (collectively, the "Arizona
> Plaintiffs")—brought suit against Raytheon under 42 U.S.C. §§ 2000e-2 and
> 2000e-3 ("Title VII") in the United States District Court for the District of
> Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action").

As Defendant acknowledges, that action commenced on September 24, 2022, which was before

defendant claims that all Plaintiffs received their Right to Sue letters. Memorandum at 9.

Defendant cannot have it both ways. If it is in fact the case that "none of the Plaintiffs

filed suit within 90 days of receiving their right-to-sue letters," that settles the *res judicata* issue.

If it is instead the case that "five of the plaintiffs in this action…brought suit against Raytheon"

within the 90 days of their Right to Sue letters, which they have, then that settles the timeliness

issue.

In its section on timeliness,[1] Defendant never attempts to reconcile its claim that none of the plaintiffs filed suit within 90 days of their Right to Sue letters and its claim elsewhere that the five named plaintiffs filed a suit that bars the present action, which it says they "commenced […] on September 24, 2022," before the Right-to-Sue dates that it provides. Defendant in that section never mentions the first suit and makes claims that these plaintiffs are two years beyond their Right to Sue Letters as though the original complaint and the first part of its memorandum did not happen.

It is not for Plaintiffs to speculate in order to reconcile these contradictions. Whatever Defendant's meaning might be, the original action was, as defendant admits, a class complaint.

"*American Pipe* [*& Constr. Co. v. Utah*, 414 U. S. 538 (1974)] and *Crown, Cork* [*& Seal Co. v. Parker*, 462 U. S. 345, (1983)] addressed […] putative class members who wish to sue individually after a class-certification denial." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 739 (2018). "American Pipe established that the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id* (citations omitted). "In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule 'to class members filing separate actions,' in addition to those who move to intervene, would result in 'a needless multiplicity of actions' filed by class members preserving their individual claims—'precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid.'" *Id*. "The filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown v. Parker*, 462 U.S. 345,

---

[1] Section B of its "Argument" section, beginning on page 21 of its memorandum.

350 (1983), *quoting Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

The standard that the Supreme Court articulated forty years ago and has upheld since is the legal framework that the Plaintiffs here fall within. The five named plaintiffs brought a class action that the District Court dismissed; they are now able to bring individual claims, which is what they did here. The plaintiffs who were not named in the original suit are unnamed plaintiffs who have been part of the group the whole time, but who were not prepared at the time to join as named plaintiffs. There was, in the words of the Supreme Court, no reason to create a "needless multiplicity of actions."

Defendant contends that *American Pipe* tolling does not continue through appeal but rather ends when the District Court dismisses a case and does not continue during the appeal of that dismissal.

For that proposition, it cites no controlling authority. The only Fourth Circuit case that it cites is *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 212 (4th Cir. 2006). The quote that it provides and emphasizes, "[T]he *American Pipe* rule provides a narrow exception to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, for whatever reason," is the conclusion of an analysis that discusses the possibility of tolling depending on the basis of dismissal of the class action. The paragraph before starts,

> As we have noted, [t]he Crown, Cork & Seal Court appears to have untethered this tolling rule from any necessary connection to the reasons for denying certification. […] In untethering the rule, the Supreme Court signaled that American Pipe tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members. If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied. *Id.* at 211(citations omitted).

10

Here the Fourth Circuit is simply stating that the statute of limitations is tolled during consideration of a class action whether the dismissal is for numerosity reasons or other grounds.

In *Bridges*, the plaintiffs *abandoned* their class claims in pursuit of a settlement agreement and consent decree, and then two years later attempted to amend their complaint to add 18 individuals from the class as individual plaintiffs. The Court ruled that the statute of limitations had run. *See*, *Id, generally*. The case does not address what happens to *American Pipe* tolling while the parties appeal. The reality is that there is not a rule in the Fourth Circuit or in this District for what happens when the plaintiffs appeal the dismissal of the class action suit.

To the extent that other courts have found that *American Pipe* tolling does not carry through appeal, again, none have done so in a manner that is binding on this Court, and such an approach conflicts with the Supreme Court's concern over the purpose of Rule 23, which is, in its words, "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions," and a "needless multiplicity of actions."[2]

---

[2] The Ninth Circuit recently acknowledged this in a ruling on a separate but related topic:

> Ending *American Pipe* tolling with anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court. It would encourage putative or certified class members to rush to intervene as individuals or to file individual actions. To preserve their right to pursue their individual claims after a potential narrowing, bystander plaintiffs would have to follow the class action closely, looking for any change in the class definition and carefully parsing what it might mean. That approach would, of course, often require individual plaintiffs to consult attorneys to ensure that they understand their rights as the class action litigation proceeds. In the many class actions that offer only a small recovery to each class member, such a requirement would quickly become financially unreasonable. "[P]otential absent class members will only be able to alert the court to their exclusion if they have knowledge of the pendency of the action, access to legal representation to present their claims, and claims sufficient in size to justify the expense of such representation." Nancy Morawetz, *Underinclusive Class Actions*, 71 N.Y.U. L. Rev. 402, 404-05 (1996). Finding counsel to pursue individual claims after a class action is narrowed may be difficult or impossible for many plaintiffs. *Id.* at 422 ("Even when the excluded class members retain the theoretical right to sue, it may be difficult for those who were excluded to find counsel to pursue relief. . . . There simply may not be

To find to the contrary is to suggest that it would be appropriate for the individual class members to file individual complaints and have them proceed through the initial phases of litigation, costing plaintiffs and the defendants in attorneys fees, and this Court or another(s) in time and resources, only to have those individual cases mooted in the event of a successful appeal. This approach contradicts the purpose of Rule 23—this Court should decline to follow any Court in another jurisdiction that would take an approach that would lead to such unnecessary actions on the part of parties seeking to preserve their individual claims. An approach that acknowledges *American Pipe* through the end of any appeal in a class action is more in line with Rule 23 and Supreme Court precedent.

"A federal class action is no longer an invitation to joinder but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974)." The rule that during the pendency of a class action complaint, the statutes of limitations for individual rights to action are tolled applies here. All of the plaintiffs timely filed. They were all either named or unnamed members of the putative class that the class action complaint represented. When the group received the last word on the class complaint, they filed the individual complaints that constitute this action. This is how the Supreme Court has interpreted Rule 23 to work for forty or fifty years.

---

another private attorney willing to take on the case of those who were left out of the case." (footnotes omitted)).

If individual claims are large enough to justify counsel for individual suits (as perhaps with many ADA claims over lost jobs), the converse problem might arise: "excluded potential class members may choose to litigate separately, thereby leading to duplicative litigation." *Id.* at 405. If bystander plaintiffs' inclusion in the class were even potentially ambiguous, they would need to intervene or file their own individual suits to assert timely claims. Such duplicative filings would "frustrate the principal function" of a class action by encouraging the "unnecessary filing of repetitious papers and motions," the very "multiplicity of activity which Rule 23 was designed to avoid." *American Pipe*, 414 U.S. at 550-51. That is why Rule 23 "both permits and encourages class members to rely on the named plaintiffs to press their claims." *Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1099-100 (9th Cir. 2024).

The lack of a rule in this Circuit and this Court, the reasoning of the Supreme Court in *American Pipe*, and the Ninth Circuit's use of a similar line of reasoning on a related issue all suggest that a reasonable attorney in like circumstances would believe his argument to be legally and factually justified under the circumstances.

## CONCLUSION

Because a reasonable attorney under the circumstances could conclude that the law and facts justify his making the argument that Plaintiffs' claims are not barred under *res judicata*, and that *American Pipe* tolling extends through appeal, the Court should deny Raytheon's motion for sanctions and award attorneys' fees and costs to Plaintiffs.

Dated: April 10, 2025                    Respectfully Submitted,

 

 

_____
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydllg.com
*Counsel for the Plaintiffs*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 10, 2025.

 

_____

13

E. Scott Lloyd

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing, was filed and served via ECF, and was served via

Federal Express and email on this 10th day of April, 2025, upon:

Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

*Counsel for Defendant RTX Corporation*

E. Scott Loyd
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
scott@lloydlg.com
*Counsel for Plaintiffs*

14