**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**
**IN OPPOSITION TO MONETARY SANCTIONS UNDER RULE 11**

COME NOW Plaintiffs in the above-styled case and respectfully submit the following in in opposition to monetary sanctions in this case.

**ARGUMENT**

The Fourth Circuit applies a four-part analyzing what sanctions are appropriate under Rule 11: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum sanction needed to deter future frivolous filings; (3) the party's ability to pay; and (4) the severity of the party's Rule 11 violation." *Davis v. Hudgins*, 896 F. Supp. 561, 574 (E.D. Va. 1995)(citing *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990)).

**A. Reasonableness of fees**

According to its filings, four attorneys worked on this case for RTX:

- Ellen McLauglin, a partner and "leading attorney in the field of labor and employment," with

1

- 45 years of legal experience, billing at $1275 / hr. ($715 actual) and contributing 2.6 hours to the issue. (Wolfe Decl. at 2).

- Dawn Solowey, a partner and co-lead of Seyfarth Shaw's appellate group with 30 years' experience, who is 'frequently quoted in major publications such as The Washington Post and The Wall Street Journal on employment law issues.'" At $1,015 / hr. ($715 actual), Ms. Solowey billed 7.3 hours into the case. *Id.*

- Samantha Brooks is an associate with 16 years' experience and is "recognized by *The Best Lawyers in America* as a leader in her field." At $830 / hr. ($605 actual), she billed 4.1 hours. *Id* at 3.

- Owen Wolfe is a partner with 13 years' experience and is the co-lead of Seyfarth's appellate group, recognized with the "2025 Roll of Honor Award from the Freedom to Read Foundation" for his appellate work. At $880 / hr. ($650 actual), Mr. Wolfe billed 47.3 hours. *Id.*

The fees requested are not reasonable in light of the realities of the dispute. RTX claims—successfully here—that the arguments Plaintiffs offered in support of their claims are not objectively reasonable. This argument cuts dramatically against the idea that four distinguished attorneys—three of them partners—needed to work on the case, with a partner and lead of the appellate practice (as opposed to an associate) doing the bulk of the work. RTX needs to pick one—either the arguments were objectively unreasonable, or they are arguments that require the engagement of four of the nation's top employment attorneys. If they are the first, then it seems unreasonable to conclude that three distinguished partners and a distinguished associate were necessary for the task, especially for the purposes of Rule 11 sanctions. While this level of service may be what RTX requests and / or is

accustomed to[1] it is objectively beyond what is necessary or reasonable to defeat an argument that no reasonable attorney would make.

**B. Minimum sanction needed to deter frivolous filings**

In the context of this litigation, where Plaintiffs are being sanctioned for filing individual claims where *res judicata* barred them, deterrence would aim to prevent another attempt to bring the same claims again under another theory, which is not going to happen. Plaintiffs offered their arguments in good faith and have a genuine disagreement over the application of *Cooper v. Fed. Res. Bank,* 467 U.S. 867, 880 (1984) and *American Pipe & Constr. Co. v. Utah*, 414 U. S. 538 (1974) to the facts of this case. They would not have brought the current case in the absence of this case law and are not planning any additional litigation separate from the appeal of the issues that they believe in good faith warrant consideration.

**C. Partys' ability to pay**

All of the Plaintiffs have endured recent disruptions to their employment, and only two of them are fully employed, but with significant expenses caring for their families. The Plaintiffs have submitted accompanying statements regarding their ability to pay.

Plaintiff Kristen Grace has no income and relies on savings. She supports her son and has no health insurance for either of them. (Grace Decl. at 1).

Plaintiff Rossanna Hernandez is employed making about $89,000 / yr. with the typical expenses of rent, utilities, insurance, groceries, and student loans. (Hernandez Decl. at 2).

Plaintiff Michael Heyser makes an average of $60,000 a year less than he was at RTX and has incurred the expenses of relocation and commuting out-of-state from his family for work. He

---

[1] RTX is the 153rd largest corporation in the world. Kate Andrews, *7 Virginia businesses land on Fortune Global 500*, VIRGINIABUSINESS.COM, (July 29, 2025) at https://virginiabusiness.com/virginia-businesses-fortune-global-500-2025/#:~:text=These%20are%20the%20Virginia%2Dbased,Virginia's%20Fortune%20500%20companies.

supports his adult daughter who has a disability. (Heyser Decl. at 1).

Plaintiff Lisa Leake is unemployed and lives off of retirement savings, resulting in a 75% decrease in income from her time at RTX. As a result of this and her support of her grandchild whom she is raising, any monetary sanction would result in a significant financial hardship. (Leake Decl. at 2).

Plaintiff Christopher Stein is unemployed and is living off of funds that he withdrew from is retirement IRA, which he uses to support his family, including two children. (Stein Decl. at 1).

Their attorney runs a small litigation practice that is providing a respectable living for the principal attorney providing for his family of nine children, seven of whom attend Catholic school, but that is subject to unpredictable external factors leading to wide fluctuations in compensation year over year. His income in 2024 was roughly half of what it was in 2023, for example. Any penalties that he would have to pay would cut directly into his ability to provide for his family, as he is the sole provider with the exception of a small calligraphy business (<$20,000/yr.; <$10,000 in 2024) that his wife has for the most part put on hold to focus on pregnancy and the care of their infant daughter.

### D. The severity of the parties' Rule 11 violation

Plaintiffs acknowledge the difficulty of remaining objective on this point, but nonetheless assert that they believe that the Rule 11 violation here was slight in light of the cases that inform the precedent on this matter. As previously indicated, this case is different in both kind and degree to other sanctionable conduct in the Fourth Circuit:

- "[W]e can see absolutely no objective indication that plaintiff's counsel ever intended to seek a modification of the law. Indeed, counsel's statements at oral argument indicate that the action was filed in a speculative effort to find someone financially liable for plaintiffs' injuries before the statute of limitations expired. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

- In a case where an attorney brought Rule 11 sanctions against an adverse attorney for his client's perjury, he did so despite "absolutely no evidence of involvement" in the perjury by the attorney, and "a quick reading of [case law] would have revealed that Cleveland's complaint had absolutely no chance of success under the existing precedent." *Cleveland Demolition Co. v. Azcon Scrap Corp., Div. of Gold Fields Am. Indus., Inc.*, 827 F.2d 984, 988 (4th Cir. 1987)(citations omitted).

- "[P]laintiff made factual contentions that were not only utterly misleading and unsupported by record evidence but, in some cases, outright misrepresentations […] [I]t appears clear that plaintiff uncovered no information to support its factual contentions, but nevertheless persisted in presenting such contentions as fact, in some cases without citation, and in other cases by citing evidence that actually contradicted such contentions. Plaintiff also continued advocating its dubious fraud theories despite the lack of any factual basis whatsoever." *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, Civil Action No. 2:07cv530, 2009 U.S. Dist. LEXIS 73903, at *33 (E.D. Va. Aug. 20, 2009).

As for the particular issues in this case, Defendant claims that "Plaintiffs never cited any legal authority in support of their legal positions," and then "Plaintiffs…cited *Cooper v. Federal Reserve Bank*[.]" In *Cooper*, the plaintiffs were intervenors and were not litigating at any point as class members, which is a factual pattern that is distinguishable from this case, where all litigants were originally asking to be class members. *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 872-874 (1984). The narrow issues here are whether courts should treat litigants who begin litigation as class members the same as litigants who began litigation as intervenors separate from a class, and whether the fact of class certification changes how courts should treat the subsequent efforts of the individual members of the class. On these issues, Defendant cites no authority, but rather insists that the only reasonable inference is that the individual class members here should be treated the same as the intervenors in *Cooper*.

On the issue of timeliness, Plaintiffs acknowledge that the appeals courts that have considered the issue (Defendant cites the 1st, 2nd, 5th, 7th, 11th, and the Federal Circuits) have not

found that *American Pipe* tolling lasts through the appeal of class certification. It is also clear, however, that there is not a hard-and-fast rule in the Fourth Circuit, and Defendant does not cite any. Plaintiffs asserts that their approach better preserves the benefits of Rule 23, which is to prevent a needless multiplicity of lawsuits where class action can prevent them.

## CONCLUSION

In conclusion, for the reasons above, Plaintiffs and Plaintiffs' counsel request that this Court refrain from monetary sanctions in this case, especially given the financial hardship that would be involved for Plaintiffs and Plaintiffs' counsel.

Dated: October 3, 2025                          Respectfully Submitted,


_____
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydllg.com
*Counsel for the Plaintiffs*


## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Scott Lloyd declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 3, 2025.

6

_____

E. Scott Lloyd

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing, was filed and served via ECF, and was served via

Federal Express and email on this 10th day of April, 2025, upon:

Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

*Counsel for Defendant RTX Corporation*

_____

E. Scott Loyd
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
scott@lloydlg.com
*Counsel for Plaintiffs*