UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

---------------------------x
KRISTEN GRACE, et al.,        :        Civil Action No.:
                              :        1:24-cv-2083
              Plaintiffs,     :
     versus                   :        Friday, September 19, 2025
                              :        Alexandria, Virginia
RTX CORPORATION,              :        Pages 1-30
                              :
              Defendant.      :
---------------------------x

        The above-entitled motions hearing was heard before the Honorable William B. Porter, United States Magistrate Judge.

                    A P P E A R A N C E S:

FOR THE PLAINTIFFS:    EDWARD SCOTT LLOYD, ESQUIRE
                       LLOYD LAW GROUP, PLLC
                       106 Chester Street
                       Suite 1
                       Front Royal, Virginia  22630
                       (540) 823-1110

FOR THE DEFENDANT:     SAMANTHA BROOKS, ESQUIRE
                       SEYFARTH SHAW LLP
                       975 F Street, NW
                       Washington, D.C.  20004
                       (202) 463-2400

                       OWEN WOLFE, ESQUIRE
                       SEYFARTH SHAW LLP
                       620 Eighth Avenue
                       32nd Floor
                       New York, New York  10018
                       (212) 218-5500

TRANSCRIBER:           STEPHANIE M. AUSTIN, RPR, CRR
                       Transcriber
                       United States District Court
                       401 Courthouse Square
                       Alexandria, Virginia  22314
                       (607) 743-1894
                       S.AustinReporting@gmail.com

        (TRANSCRIPT PROCEEDINGS RECORDED BY THE FTR SYSTEM)   1

P R O C E E D I N G S

THE DEPUTY CLERK:  Kristen Grace, et al. versus RTX Corporation, Civil Action Number 24-cv-2083.

And then will counsel please note your appearances for the record.  Thank you.

MS. BROOKS:  Good morning, Your Honor.  Samantha Brooks for the defendant.

THE COURT:  Good morning.

MR. WOLFE:  Good morning, Your Honor.  Owen Wolfe of Seyfarth Shaw, also on behalf of defendant.

THE COURT:  Good morning.

MR. LLOYD:  Good morning, Your Honor.  Scott Lloyd on behalf of Plaintiffs Kristen Grace, et al.

THE COURT:  Good morning, Mr. Lloyd.

All right.  This is here on defendant's motion for sanction.  I understand, Mr. Wolfe, you're going to be handling the argument?

MR. WOLFE:  Yes, Your Honor.

THE COURT:  You may proceed.

MR. WOLFE:  Thank you, Your Honor.  Good morning.

Just as an initial matter, this was in the papers, but I just wanted to make sure that it was also clear on the record.  My client is no longer seeking sanctions against one of the plaintiffs, that's Francisco Garza.

THE COURT:  I understand he's withdrawing.  Has

2

that happened already?

MR. WOLFE:  I don't know that there's been a formal withdrawal, and I would defer to plaintiffs' counsel, but I believe he's not listed on the Fourth Circuit appeal that was filed by the remaining plaintiffs, and we were willing to withdraw that request for relief based on counsel's representation.

THE COURT:  All right.

MR. WOLFE:  But as to the remaining defendants, we do still seek Rule 11 sanctions, Your Honor.  And the Fourth Circuit appeal that I just mentioned I think actually underscores the need for sanctions, because at this point, the plaintiffs have effectively tripled down on what we would submit is objectively unreasonable conduct in this litigation, primarily centered around the issue of res judicata.

And as the Court is aware, five of the plaintiffs in this case previously filed suit in Arizona.  That case was dismissed by an Arizona federal court with prejudice in early 2023, unanimously affirmed by the Ninth Circuit, and petition for a writ of certiorari was denied by the Supreme Court in October of 2024.

It's undisputed that the Arizona case and this case arise from the same facts and circumstances, and it's also undisputed that the Title VII failure to accommodate

3

claim that was asserted in this case could have been asserted in the Arizona action. So, Your Honor, right on its face, this is sort of a classic example of where res judicata would apply.

So we briefed this issue a number of times, including on the motion to dismiss that was granted by Judge Hilton, and the only authority that was really ever cited by the plaintiffs that they asserted was in support of their argument was a 1984 U.S. Supreme Court case called *Cooper v. Federal Reserve Bank*.

But, Your Honor, as we demonstrated in the papers, if anything, that case has supported my client's position, because the *Cooper* case -- if Your Honor will permit, I'll just delve very quickly into the facts.

THE COURT: Well, I'm familiar with it, I think.

MR. WOLFE: Okay.

THE COURT: And my understanding of the *Cooper* case is that it stands for the proposition that if you have a class action with plaintiffs who have brought pattern and practice type discrimination claims, that the class could be bound by any determination for or against them on the pattern of practice claims, but individual claims that they may have for discrimination are not part of that class and so can still be maintained individually.

MR. WOLFE: That's correct, Your Honor. And I

4

guess I would also add that the *Cooper* court held that where the individual discrimination claims bought by -- brought by individual plaintiffs based on their individual allegations are adjudicated to conclusion, those individuals are bound and they cannot sue again.

THE COURT:  As were the plaintiffs in that case, because they brought both pattern and practice and individual claims.

MR. WOLFE:  Correct, Your Honor.

And that's exactly what happened in this case. The five individual plaintiffs brought individual claims based on their particular allegations in Arizona and also asserted that they could represent a class.  The Arizona federal court looked at those individualized allegations and said not only did you not state a claim, but you can't ever state a claim, and therefore, I'm dismissing your individual claims with prejudice.  And my client had actually moved to strike class allegations from the complaint, and the Arizona court said we don't even need to go there because these individuals can't state individual claims, I don't need to even weigh into whether there's a class.  So, Your Honor, again, I think *Cooper* supports our position.

We also cited a few other cases that were not addressed by plaintiffs in their opposition papers, which would be the *Mohamed* case in the Fourth Circuit from 2004,

5

and the *Alexander* case from the Seventh Circuit in 1985. And those cases essentially say the same thing.  For example, in the *Mohamed* case before the Fourth Circuit, the individuals, as part of their argument, they argued to the Fourth Circuit if the dismissal of our claims is affirmed, you're preventing a potentially larger class of individuals from being able to sue.  And the Fourth Circuit said no, res judicata binds you, individual plaintiffs, but other members of the class whose individual claims were not adjudicated are free to sue.

So again, Your Honor, I think those cases, they weren't responded to.  *Cooper* supports our position. Although not dispositive, I will note again that Judge Hilton agreed and did dismiss the case on res judicata grounds.

So we would submit that for that issue alone, Rule 11 sanctions would be warranted here because there's just no objectively reasonable basis on which an attorney could have believed that the five Arizona plaintiffs could have brought suit again.

But we do have one other issue here that I'll just touch on briefly, Your Honor, and that's the issue of timeliness.  And, you know, I think that issue perhaps is not quite as straightforward as the res judicata issue, but I think it also compels the same result.

6

THE COURT:  Let me stop you there, because the question I had about the timing issue was what act would have tolled the failure to accommodate claim?

MR. WOLFE:  Well, I think under the most generous interpretation for the plaintiffs, there could have been tolling based on the filing of the class action complaint and the fact --

THE COURT:  Well, was failure to accommodate a claim that was raised in the Arizona complaint?

MR. WOLFE:  It was not, Your Honor.

THE COURT:  I mean, as I read the Ninth Circuit brief that was filed by the plaintiff, they said that it wasn't and it should have been and it was the fault of their counsel for not doing it, and they were trying to I guess have the case shifted back to the district judge to add that claim.

So when I was reading the papers and addressing or thinking about the timing issues, I certainly understand your position with the timing of the 90 day -- between the right to sue and the filing date, but I got stuck myself on the idea of what was the act that tolled the failure to accommodate?

MR. WOLFE:  Well, Your Honor, that's a fair point, and I think there certainly is an argument that the *American Pipe* tolling never applied because there was no failure to

7

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

accommodate claim asserted.

THE COURT: Well, that's my point. I mean, I get the *American Pipe* argument, and I understand that, and as I understand the *American Pipe* decision, that as soon as the class determination is negatively addressed against the class, the class is left to their own devices for all the policy reasons that are raised in that opinion.

But, again, I'm still caught on this idea that -- you know, let's take it out of a failure to accommodate claim and think about if a party has two claims, whatever those claims may be, say if they're Title VII related to a right to sue letter and you bring one but you don't bring the other, how is there ever tolling for the second claim?

MR. WOLFE: Well, I mean, Your Honor, we would certainly agree that there was no tolling.

THE COURT: Well, I thought that you might, but I just want to test it with you. And I'm going to ask Mr. Lloyd the same question to see if he's got a response to it. But it just struck me that that in and of itself is dispositive.

First of all, the question I had in my mind was, was it in the charge, but that's not, I guess, really before me, and you haven't argued that it was or it wasn't. But if there was a failure to accommodate claim that was appropriately listed in the charge and the right to sue

8

letter was issued whenever it was issued, I'd like to know what the act was that would have tolled the running of that claim.

I get Mr. Lloyd's argument, the plaintiffs' argument, that there may have been tolling at least for the individual plaintiffs, and maybe even for the class members until the class issue was decided that tolled the wrongful termination, the discrimination and the retaliation claims, but there has to be some act to toll the failure to accommodate; doesn't there?

MR. WOLFE:  Your Honor, I'm hesitant to sort of argue against myself, you know, because I think, you know, what you're saying is that there wasn't really a basis for there to be an assertion that tolling applied here.

I guess in fairness, I think there is a reasonable perhaps argument that the tolling should have applied because the failure to accommodate claim could have been asserted in Arizona even if it wasn't.

You know, we certainly didn't concede that the tolling would have applied, period, and we sort of said, you know, being generous, assuming that it could have applied here and assuming that it did go through what the courts have said, which is through February 2023 when the Arizona case was dismissed with prejudice, they're still untimely, and there wasn't even a reasonable basis to argue otherwise.

9

But I certainly agree with Your Honor.  I don't think the tolling ever took effect.

THE COURT:  Well, I'm certainly not trying to commit error here by basing my ruling on that, which is why I'm giving you the opportunity to tell me if you think I'm wrong.  And it strikes me that just, in listening to you articulate your response to that question, that that seems to be combining the analysis, which I think are two separate analyses, which is the res judicata and the requirement that one file a Title VII claim within 90 days of receiving a right to sue letter.

MR. WOLFE:  No, I think that's correct, Your Honor.

THE COURT:  Okay.

MR. WOLFE:  So I'm certainly happy if you would like to address sort of where this falls if *American Pipe* did apply.  But I do think our papers address that pretty thoroughly, so I'm certainly happy to rest at this point, Your Honor.

THE COURT:  Is there any reason you think that a decision on this motion ought to be stayed or delayed until the appeal is resolved?

MR. WOLFE:  I don't think so, Your Honor, because I assume that there could be an appeal from the Rule 11 order, you know, potentially, depending on what the decision

10

is.  And then I think if that's the case, it would be better to have that now so that potentially those appeals could be consolidated and it could all be addressed at once as opposed to maybe a year or more down the road.

THE COURT:  I understand.

MR. WOLFE:  Yes.  Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Lloyd.

MR. LLOYD:  Thank you, Your Honor.

I wanted to spend a few minutes here just highlighting -- this is a motion for Rule 11 sanctions, and so I just wanted to walk the Court a little bit through -- briefly through instances where the Court has addressed Rule 11 behavior.  And "the Court" meaning the Fourth Circuit.  And these are -- we're limited to instances that defendant has raised in their briefing, and so these are the cases that defendant, the movant, are relying on.

So you have *Baker v. Booz Allen Hamilton*.  There, the plaintiff was suing and alleging that one of Booz's employees had --

THE COURT:  These are the cases you discuss in your brief; is that right?

MR. LLOYD:  It is, Your Honor.

THE COURT:  Okay.

MR. LLOYD:  That he had an emotional disorder, and

11

the Court's order was that it was not objectively unreasonable for Baker to claim that Davenport suffered from an emotional disorder, and so Rule 11 sanctions were denied in that case.

You have *Cabell v. Petty*, and this is a situation where the plaintiffs were an estate of somebody who was killed by an individual. That individual had had a shotgun confiscated from him and then returned to him by the Commonwealth attorney. And the plaintiff, the estate in that case, was suing the Commonwealth attorney for returning the gun back to the individual which he later used to kill the decedent. And so the Fourth Circuit agreed with the assessment that the attorney was not seeking any reversal of law. He was filing it in a speculative effort to find someone financially liable for a plaintiff's injuries before the statute of limitations expired.

You have *Cleveland Demolition v. Azcon Scrap*. There, Cleveland lost the case that they built on the vagueness of --

THE COURT: I've read this in your papers.

MR. LLOYD: Okay.

THE COURT: And I understand that.

But tell me how that applies here. You know, let's start with the issue of -- that I finished with Mr. Wolfe about.

12

MR. LLOYD:  Sure.

THE COURT:  Because I'm interested in this, and I want you to tell me, if you think I'm wrong, why you think I'm wrong.

The timing issue on the failure to accommodate claim, what action tolled the running of the 90 days for the failure to accommodate claim?

MR. LLOYD:  Sure.  And, Your Honor, just to take -- brief stuff out, and, I mean, here is a group of attorneys discussing a legal point, and I think -- in delving into it, and I think this case is full of interesting and unsettled legal points, and the question here is whether an unreasonable attorney could take the position that we took.  Here --

THE COURT:  Well, I mean, that's why I'm interested in the answer to my question.

MR. LLOYD:  Sure.

THE COURT:  And then we can apply that to whether or not it was reasonable to assert that.  Because if you're asserting that there's some novel legal argument you're trying to advance, something like really a plaintiff gets more than 90 days, well, that's maybe asserting a novel position, but we're not there yet.  We're still within the first step of the analysis, which is what did you do and why did you do it.  And I'm interested in an answer to my

13

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

question, which is the second case, the Virginia case -- and we'll come back to res judicata, and we can talk about that. I'm interested in hearing your arguments on that.

MR. LLOYD:  Sure.

THE COURT:  But focusing on the timing issue, because I think it applies to all the plaintiffs.

MR. LLOYD:  Yes.

THE COURT:  And it wasn't raised by either party, which always gives me some pause for concern that I may be missing something or may be misunderstanding something. But, you know, my knowledge of Title VII law is you have 90 days from the issuance of the right to sue letter to file a claim that was raised in your charge.

Do you know, by the way, if failure to accommodate was included in the charge?

MR. LLOYD:  In the original charge?

THE COURT:  For each of these plaintiffs.

MR. LLOYD:  For each of these plaintiffs.  To -- my understanding is that it was.

THE COURT:  Okay.

MR. LLOYD:  But --

THE COURT:  That's enough for me.  That's enough for me.

MR. LLOYD:  Okay.

THE COURT:  But what is the act that stayed the

14

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

running of the 90 days for the failure to accommodate charge?

MR. LLOYD: Okay. So, you know, the brief answer is that it was the filing of the original Arizona complaint styled as a class complaint.

THE COURT: Okay. So did the Arizona complaint contain a claim for failure to accommodate?

MR. LLOYD: It did not, Your Honor.

THE COURT: So then how could that toll the running of the statute of limitations for a failure to accommodate claim?

MR. LLOYD: I think the -- the answer is essentially in our understanding of what *Cooper* -- or how *Cooper* instructs us to handle --

THE COURT: Let's not talk about *Cooper* yet, because I just want a factual answer. Don't give me a legal answer. What's the factual act? What's the act? What's the occurrence? What's the thing that happened that you contend stopped the running of the 90 days for the failure to accommodate theory?

MR. LLOYD: It was the filing of the original action, acknowledging -- admittedly it didn't have the failure to accommodate claim included in it.

THE COURT: Okay. So now explain to me how a complaint that doesn't include a claim can toll that claim.

15

MR. LLOYD: Because this is -- the Arizona claim represented the plaintiffs' and the punitive class's effort to bring a claim as a punitive class. Once that was --

THE COURT: Okay.

MR. LLOYD: -- dispensed with, then --

THE COURT: But we still have to look at the claims; right? And the claims were wrongful termination, discrimination and retaliation. So, at best, it would be tolling of those three claims; correct?

MR. LLOYD: Well, we would disagree, Your Honor.

THE COURT: Tell me why.

MR. LLOYD: Under the theory that essentially -- under *Cooper*, the class -- or the group was attempting to form a class, and the Arizona complaint represented their effort to have a class -- have a class action.

THE COURT: I understand that, but a class action asserts claims.

MR. LLOYD: Well, it -- understood, Your Honor. And so that was their first -- essentially their effort as a punitive class. And then that went away, and so now we're a bunch of individuals, we all have our own fact pattern, we all have our own claim.

THE COURT: Okay. Well, we've rush passed that one away.

Let's talk about what went away.

16

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

MR. LLOYD:  Yes.

THE COURT:  In your complaint that you filed -- I guess you didn't file it.

In the complaint that the plaintiffs filed, the Arizona plaintiffs -- I refer to them as, and I think you do in your papers, which is where I got it -- the Arizona plaintiffs who were the original ones, and then the additional plaintiffs, which were the ones who were added once suit was filed in Virginia; is that right?

MR. LLOYD:  Yes.

THE COURT:  Okay.  So the Arizona plaintiffs filed a complaint in Arizona asserting claims for discrimination, wrongful discharge and retaliation.  They brought it in their individual capacities as alleged in the complaint, that's what the complaint says.  A class action was never formed; is that right?

MR. LLOYD:  There is -- the Arizona court did not certify a class.  That's correct.

THE COURT:  Okay.  So what we're left with is the individual plaintiff claims.  And the individual plaintiff claims that you said went away, went away because the district judge in Arizona determined that they didn't state a claim, and it would have been futile to grant them amendment to stay the claim.  The Ninth Circuit agreed, the Supreme Court refused a writ.

17

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

MR. LLOYD:  That's correct.

THE COURT:  Okay.  So the Arizona plaintiffs' claims for wrongful discharge, discrimination or retaliation are forever gone; do you agree with that?

MR. LLOYD:  No, Your Honor, not as individuals. The logic of our arguments here would have to say that now that the class -- the efforts that form a class was dismissed, that under *Cooper*, the individuals are able to bring individual claims.

THE COURT:  Okay.  So if I understand your argument then, your argument is then a group of people can file as plaintiffs something called a class action that does not bind them at all with respect to their individual claims, but that filing has the effect of tolling any running of the statute of limitation for those individual claims, and so if the class gets dismissed, denied, whatever the case may be, those plaintiffs get a second bite at the apple, having, under your theory, not brought their claims individually, but get the benefit of the tolling of the statute of limitations?

MR. LLOYD:  Your Honor, I think that that is essentially the benefit of Rule 23, and that is that not every punitive class member has to bring an individual claim and assert everything at the moment that the punitive class files their complaint.

18

THE COURT: Whether I agree with you or not, I'm not sure that I do, but maybe I do, but the plaintiffs who actually brought the claims are bound by the allegations in the claims that they brought; you agree with that, correct?

MR. LLOYD: Well, yes, Your Honor.

THE COURT: Okay.

MR. LLOYD: In the sense that they could not bring a second class action claim. So to the question of --

THE COURT: But it's your view, back to my hypothetical, that they could bring both a class action, lose that, and then bring an individual claim based on the same set of facts?

MR. LLOYD: That's correct. That, I think, is the ruling of *Cooper*.

THE COURT: I don't find that to be objectively reasonable.

What's the law you base that on?

MR. LLOYD: That's from *Cooper*.

THE COURT: Tell me what in *Cooper* supports the view that a group of people can bring a class action, have it dismissed, and that they can bring it again as individuals.

MR. LLOYD: That, I think, is the entire holding of *Cooper*. That and --

THE COURT: Well, you would agree with me that in

19

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

*Cooper*, the individual plaintiffs who brought that class action had their individual claims resolved and they were bound by them?

MR. LLOYD: Well, Your Honor, I think that there's a distinction that we need to make here, and that is the -- in *Cooper*, we had a group of plaintiffs who started a class action, class was certified in that case, and then there were four individual plaintiffs who joined as interveners. And those were, from beginning to end -- according to any classification, those were individual complainants.

What *Cooper* does not address, the Fourth Circuit doesn't address, is what happens to a punitive class member when their class is denied. And --

THE COURT: Well, first of all, I'm not sure I understand what you mean by "punitive class member." As I understand Rule 23, there are individual plaintiffs who file a complaint seeking to certify a class. And a class represents a group of people who share certain things in common. And if the class is certified, then you have class members.

MR. LLOYD: Yes.

THE COURT: And then you have the lead class members who have the individual claims, and they're the ones who are driving the litigation, and then you have absent class members, which are the ones who would benefit from the

20

class.

In this case, you keep saying they would be punitive class members as if the complaint means absolutely nothing unless a class is certified, and I don't see any support for that in the Rule 23.

MR. LLOYD:  Well, Your Honor, I think if we highlight -- so in this particular case, there were three plaintiffs who were essentially silent members of the individual group, and then --

THE COURT:  I don't know what that means.

MR. LLOYD:  Well, they were --

THE COURT:  They were plaintiffs.

MR. LLOYD:  They were not named in the original complaint, but they would have fallen under the class that the group was asserting.

THE COURT:  These are the additional plaintiffs who were brought in the Virginia action?

MR. LLOYD:  That's correct.

And so those three plaintiffs were relying on the class process to have their rights secured.

You know, under -- theoretically they could have had a class certified and they could have joined and they could have prevailed in court.

THE COURT:  Sure.  But *American Pipe* says as soon as class certification is decided to the class's detriment,

21

then the statute begins to run again and people are responsible for bringing their own claims.

MR. LLOYD:  And so the question -- but the question that *American Pipe* left unanswered is for how long? Up to the dismissal by the district court or through appeal? And I think that there are a few different approaches in different circuits --

THE COURT:  Well, the --

MR. LLOYD:  -- on that question.

THE COURT:  -- defendants have cited a series of cases that say that it does not apply through the appeal.

MR. LLOYD:  Not in the Fourth Circuit, however, Your Honor, and I think that --

THE COURT:  Are you aware of any case that says it does apply through an appeal?

MR. LLOYD:  Not in the Fourth Circuit.

THE COURT:  Are you aware of any case that says the tolling applies through the appeal?

MR. LLOYD:  I'm not aware of any, Your Honor, but I would also say that it doesn't come up very often, and I think that it's just a -- it's essentially -- well, it's a case of first impression.  Here in the Fourth Circuit, we have no -- we have no precedent -- controlling precedent that would instruct us on that question.

But what we did cite was Rule 23 and also *American*

22

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

*Pipe*'s reasoning about Rule 23, and that Rule 23 confers a benefit on plaintiffs and litigants.  And the benefit is that -- well, it also confers a benefit on the courts.  And that anybody who thinks they might have a claim are able to rely on the class process and not feel like they have to bring, in the Court's words, a multiplicity of claims.

THE COURT:  Well, what rights do they get if there's never a class process?

MR. LLOYD:  To bring an individual claim.

THE COURT:  I agree.

MR. LLOYD:  Right.

THE COURT:  And there was no class ever certified in this case, so there never was a class process.

MR. LLOYD:  Well -- and so that began the beginning of the individual rights process, and that's what we initiated here.

THE COURT:  I mean, if your theory is right, right, or your argument is sound that the class action was only for the class and didn't affect your individual plaintiffs', your Arizona plaintiffs' rights to bring individual claims, why did you appeal it?  Why didn't you just say, oh, well, we'll just go ahead and file our individual claims?

MR. LLOYD:  Well, the group was seeking to assert claims on behalf of not only themselves but the other people

23

who were affected.  There are other employees who were affected by the policy.

THE COURT:  But you didn't appeal the denial of the class certification.

MR. LLOYD:  My understanding is that we did, Your Honor.

THE COURT:  Okay.

MR. LLOYD:  I apologize if I'm getting something wrong.

THE COURT:  All right.

MR. LLOYD:  But as to -- I did want to speak for a moment about Rule 11 sanctions in the context of res judicata, which this actually -- these are listed in *Oudeh v. Goshen,* which the defendants cite, but not explicitly in their briefing.

There we have a case where the Court sanctions plaintiff after the plaintiff initiated more than a dozen lawsuits over a seven-year period concerning foreclosures and surety bonds which underlying issues had been fully litigated.

In *Black v. New Jersey*, the Court sanctioned the plaintiff for filing the same action in the Middle District of North Carolina twice and once in the Eastern District of North Carolina.

And then there's *McLaughlin v. Bradley.*  The Court

24

initially did not impose sanctions despite finding the plaintiffs previous litigation plainly foreclosed to action in the hopes that plaintiff would cease and desist, but the Court did impose sanctions after the litigant filed four post judgment motions even after notice from the Court.

And so here, I think that this is different in kind and in degree from the instances that defendant cites for Rule 11 sanctions in this context. I think that here we have a disagreement about the application of *Cooper*, the application of *American Pipe* to this group of litigants. And I think it's objectively reasonable for an attorney to assert the arguments that we have asserted.

THE COURT: Well, just help me understand, what law were you relying on when you took the position like you've taken now -- like you're taking now and you took in this case that you can file a case, lose that case and then file another one, and the only difference being one was a class and one was an individual?

MR. LLOYD: It's just what we cited in our brief, but it's *Cooper* and *American Pipe*.

THE COURT: Okay. I understand your position. Anything else you want to tell me?

MR. LLOYD: Nothing further, Your Honor.

THE COURT: Mr. Wolfe, any response?

MR. WOLFE: Nothing further, Your Honor. Thank

you.

THE COURT:  Okay.  This action comes before the Court on defendant's amended motion for sanctions.  On July 22nd, 2025, Judge Hilton granted defendant's motion to dismiss plaintiffs' amended complaint to serving a Title VII failure to accommodate theory on the ground that the Arizona claims are barred by the doctrine of res judicata, as all the Arizona plaintiffs had been named individual parties in a complaint filed in the District of Arizona that had asserted Title VII discrimination, wrongful termination and retaliation claims based on the same facts as the complaint for failure to accommodate in this court.

The District Court of Arizona's decision was affirmed by the Ninth Circuit, and the United States Supreme Court refused a writ of certiorari.  Judge Hilton also granted the motion to dismiss on the ground that all plaintiffs' claims were time-barred because none of them filed their failure to accommodate claim within 90 days of having received a right to sue letter from the EEOC.

Applying a standard of objective reasonableness, I find the plaintiff complaint and amended complaint filed in Virginia had no legal merit.  Had plaintiffs satisfied their affirmative duty to investigate, they would have or should have concluded that the Arizona plaintiffs' reasonable accommodations claims were barred by res judicata and that

26

all the plaintiffs' reasonable accommodation claims were time-barred.

The claims both in Arizona and Virginia were all based on the same facts.  Plaintiffs admit as much in their briefing before the Ninth Circuit when they argued that a failure to accommodate claim always should have been part of the Arizona action, but they placed the blame for not alleging it at the feet of their prior counsel.

The District Court of Arizona dismissed the Arizona plaintiffs' Title VII claims, the Ninth Circuit affirmed, and the Supreme Court declined the writ.

Counsel's explanation for filing the Virginia action is based on their view that there's some difference between the class complaint that was filed in Arizona on behalf of the Arizona plaintiffs and the regular complaint that was filed in Virginia.  That explanation, in my view, does not hold water for several reasons.

Initially, the Arizona complaint states clearly that it's filed on behalf of the named plaintiffs in that case.  The Arizona plaintiffs here, on behalf of themselves.  And procedurally while filed as a class action, no class was ever certified by the Court, and the case was decided based on the Arizona plaintiffs' allegation of alleged Title VII discrimination, wrongful termination and retaliation.  Plaintiffs have argued in their papers and here that the

27

Supreme Court's decision in *Cooper* supports their theory and provides some distinction between class claims and individual claims.

I do not believe *Cooper* says as much.  Instead, *Cooper* draws a distinction between pattern and practice discrimination theories that are decided on a class basis and a class member's right to bring a claim based on an individual-specific claim of discrimination.

The Arizona plaintiffs filed their own Title VII claims for discrimination, wrongful termination and retaliation in the District of Arizona.  Those claims were decided by that court, and the Arizona plaintiffs clearly could have and should have brought their failure to accommodate claim in the Arizona case.

Similarly, all plaintiffs' claims for reasonable accommodation based on Title VII are time-barred.  The Virginia suit was filed on November 20th, 2024, so to be timely, each plaintiff's right to sue letter must have been issued within the 90-day window before November 20th, 2024, which meant that right to sue letters must have been issued on or after August 22nd, 2024.  But all the right to sue letters were issued before this date, in some instances, many years before this date.

To the extent the plaintiffs rely on *American Pipe*, that argument fails, too, in my opinion, because as

28

Judge Hilton found, class certification was rejected by the District Court of Arizona at least by February 27th, 2023 when it dismissed all of the claims in the case.  Therefore, according to *American Pipe*, once class certification had been rejected, the statute of limitations was no longer tolled for class members.

More to the point, nothing ever tolled the claim for failure to accommodate.  No one disputes that none of the plaintiffs asserted a failure to accommodate theory under Title VII until this case was filed on November 20th, 2024, and no event had occurred at all that would have tolled that theory, and it was not part of the Arizona action and could not have been tolled by the filing of that action.  Again, applying the standard of reasonableness, no lawyer could have or should have concluded that a claim for failure to accommodate was not time-barred based on the facts here.

Defendant raised these issues with plaintiffs' counsel before filing its motion for sanctions, thereby satisfying its Rule 11 obligation.  Plaintiffs responded by arguing that any motion for sanctions filed by defendants would be subject to a motion for sanctions filed by plaintiffs and elected to proceed with its claims with no reasonable basis to do so.  For all those reasons, defendant's motion for sanctions is granted.

29

I think the issue of an appropriate sanction still needs to be resolved.  Defendants have asked for $45,000, but you haven't provided any information in support of that.  Should defendants wish to proceed with a financial sanction as a remedy for its motion, it must file a brief with any supporting information by 5 p.m. on September 26th.  Plaintiff must file any opposition by 5 p.m. on October 3rd.  Defendant may file any reply by noon on October 8th, 2025, and the Court will schedule oral argument on a motion for October 10th at 10:00.

Anything further from the plaintiff?

MR. LLOYD:  Nothing, Your Honor.

THE COURT:  Anything further from the defendant?

MR. WOLFE:  No, Your Honor.

THE COURT:  All right.  Thank you, all.

(Proceedings adjourned at.)

---------------------------------

I certify that the foregoing is a true and accurate, to the best of my ability, transcription of proceedings recorded by electronic sound recording (FTR system).

*Stephanie Austin*

_____

Stephanie M. Austin, RPR, CRR

30